State vs. Pruett.

## No. 12,261.

### STATE OF LOUISIANA VS. LEONIDAS PRUETT.

| 49 | 283 |
|----|-----|
| 50 | 11 |
| 50 | 404 |
| 51 | 239 |
| 51 | 240 |
| 51 | 245 |
| 51 | 440 |

| 49 | 283 |
|----|-----|
| 52 | 210 |
| 52 | 449 |

| 49 | 283 |
|----|-----|
| 114 | 856 |
| 114 | 859 |

| 49 | 283 |
|----|-----|
| 115 | 745 |

| 49 | 283 |
|----|-----|
| 116 | 100 |

A motion to quash a venire must be filed on the first day of the term. State vs. Collins, 48 An. 1454.

The express statutory grant to a defendant by Act No. 113 of 1896, to have the testimony taken down in writing can not be denied because the exercise of it might be barren of results in the particular case. That fact could only be tested on appeal when the record would come up.

It has been held in this State that threats made by the deceased are only exceptionally admissible in evidence, but when the particular matter being considered through the testimony is not as to justification or mitigation of the homicide, but justification or explanation of the circumstances under which a certain statement by the defendant had been made, the question is not presented under the circumstances which require proof of a prior overt act on part of the deceased. In order to explain such statement (as to which the State had elicited testimony), defendant on the stand as a witness, was entitled to show that threats made by the deceased had been communicated to him.

When an application is made for a change of venue, the court may postpone action on the motion until after an examination on their *voir dire* of the jurors of the panel, but the accused has a right to have it taken up and passed on as a substantive motion after hearing, contradictorily with the State and on evidence adduced in support of the allegations of the same. Am. and Eng. Ency. of Law, Vol. 3, p. 99.

On the trial of such an application, the accused is not, concluded by the answers of the jurors on their *voir dire*. He is entitled to traverse, contradict and disprove these statements. As the condition of a juror's mind, in respect to his being unbiased and impartial, rests entirely upon his own assertion, his declarations on that subject should not close the door to an investigation and examination of facts which would tend to show that the juror either unconsciously or designedly was not stating the truth.

In a criminal suit the State should at once offer on its side all the evidence which it has, and not reserve its real or main attack until after the defendant had closed his case; but this matter must be left in each case to the sound judicial discretion of the court, which having knowledge of the general rule would protect the defendant by enforcing it, unless by reason of some exceptional state of facts.

In ordering the summons of tales jurors the provisions of Sec. 7 of Act No. 99 of 1896 are not to be taken as mandatory, without regard to the facts of any special case. A certain discretion has to be left to the court, to be exercised by it in such manner as that wrong and disadvantages be worked neither to the State nor to the accused.

APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry. *Dupré, J.*

R. Lee Garland, District Attorney, for Plaintiff, Appellee.

W. S. Frazee, F. B. Dubuisson, C. F. Garland and John N. Ogden or Defendant, Appellant.

Argued and submitted November 21, 1896.
Rehearing refused January 18, 1897.

### STATEMENT OF CASE.

Defendant was indicted for murder, found guilty of manslaughter and sentenced to fifteen years' imprisonment in the State penitentiary. From this verdict and sentence he has appealed, presenting a number of bills of exception for review.

The first bill is reserved to the overruling a motion to quash the indictment, on three grounds; first, because the list or *venire* from which the grand jury was drawn was not published; secondly, because one of the jury commissioners was a deputy United States postmaster in active discharge of his duties as such at the time; thirdly, because another of the jury commissioners was at the time a member of the police jury. The motion was overruled on the ground that it was filed too late; that it did not allege fraud or injury, and because the clerk was right in not publishing the lists after the new law took effect, because of the *proviso* of the repealing clause.

The second bill recites that the defendant filed a motion for a change of venue, which he annexed to his bill; that a day had been fixed for the hearing of the same, notice given and a number of witnesses were summoned by him to prove the allegations thereof; that when it was called for hearing the District Attorney moved that evidence in support of the motion be postponed until after the jury had been examined on its *voir dire* in order to ascertain from that examination whether a fair and impartial trial could be had or not; that defendant objected on the ground that that would be submitting the question to a test not contemplated by law or the pleadings: that the change of *venue* is a constitutional right which should not be lightly dealt with, and that the sanction of the Constitution (Arts. 7 and 158) attaches to the law existing on the subject (Secs. 1022 *et seq.*, Revised Statutes), which declares that the motion for a change of *venue* shall be made in open court or by petition at chambers, and that the judge should award the change if after hearing contradictorily with the State's representative and " an examination of the evidence adduced," he should be of the opinion that the party applying could not have a fair and impartial trial in

the parish wherein the indictment was pending.; that therefore the statute contemplated the hearing of evidence contradictorily; that the judge overruled the motion in a written opinion, which defendant annexed to his bill; and that to this ruling defendant reserved and tendered a bill of exceptions.

The third bill recites that after the judge presiding had ordered that the *venire* of jurors be examined on their "*voir dire,*" prior to taking up defendant's motion for a change of *venue*, as detailed in bill of exception No. 2, the judge, on the examination of the jurors, would not permit defendant to question the jurors on the lines laid down in said motion, or as to the truth or falsity of the averments thereof, nor would he permit the said jurors to be questioned as to the political party to which they belonged during the last political campaign in the parish, as to the feelings and prejudices aroused, between the contending parties, nor as to whether the jurors entertained those feelings and prejudices, all of which would appear by reference to the examination of said jurors, which was reduced to writing and was annexed to the bill and made part thereof for explanation and certainty; that after the examination of the jurors on their *voir dire*, limited and circumscribed as it was, defendant urged that that examination was no test of whether he could obtain a fair trial in the parish under the condition of things charged in the motion for a change of *venue*. Defendant, therefore, moved to have his witnesses heard for the purpose of proving the averments of his motion, which he desired to have taken up, and for the purpose of rebutting the inference that could be drawn from the said examination of said jurors, that he could obtain a fair and impartial trial in the parish, if any such inference there was; that the examination of the jurors did not touch upon the main facts set up in the motion for a change of *venue*, and that the action of the court was the denial of a constitutional right, without a hearing and without due process of law; that the court overruled defendant in all his objections, questions and contentions and ordered the jury to be empaneled, which was accomplished after the examination of a large number of talesmen.

The court's action was based upon reasons assigned which need not here be stated. A large part of defendant's bill, and of the judge's reasons, are made up of "arguments" to sustain the position which the defendant and the judge respectively took, and are here omitted.

The fourth bill states that on the day the case was fixed for trial (September 14) defendant applied for and obtained compulsory process for the attendance of Charles Medici, a material witness for defence, who was living at the time in the parish of Ascension; that on the day fixed for trial (September 17) the District Attorney called the case for trial. Whereupon defendant announced that he was not ready for trial, because of the absence of said Medici, and because no return had been made upon said process; that the letter of the sheriff of Ascension to the clerk of court, annexed to the bill, which was filed September, 17, 1896, and dated September 16, 1896, shows that the sheriff had made no effort to serve said process; that defendant, for said reasons, objected to going to trial; that thereafter he filed a written motion (annexed to the bill) asking for additional compulsory process or *alias* subpœna, to have the same served on Medici and proper return made, and asked for sufficient delay for said purpose, all of which was refused by the court for the reason that the State stood ready to admit, and did admit, that if the witness was present he would testify as stated in the affidavit for the process which was done under the provisions of Act No. 84 of 1894.

The fifth bill states that on the 18th September, 1896, defendant filed a motion for a continuance (annexed to the bill), which the court refused for the reason that the State agreed to admit, and did admit, that if the witness (Medici) was present he would testify as stated in the affidavit for the continuance agreeably to Act 84 of 1894.

The eighth bill recites that one Cahanin being on the stand as a witness to prove express malice, said witness swore, first, that defendant Pruett told him on the morning of the homicide " he was going to kill or would kill the deceased," and on cross-examination modified said statement by saying that defendant said " he would have to kill the deceased." That thereupon Pruett, the defendant, was put upon the stand in his own behalf, and having related the conversation he had with Cahanin, was further asked: " State to the jury and detail any occurrences that may have taken place between you and Sandoz (the deceased) in order to explain the remark made by you to Cahanin," but that the question was ruled out by the court for the following reason, viz.: The court permitted the witness to fully explain all the reasons he had for telling Cahanin that he would have to kill the deceased. The court expressly stated that the State could prove the threat, but the defendant had the

right to explain why the remark was made by the witness. What the court ruled out was this: That defendant had no right to go into details of previous quarrels and difficulties in order to prove who was right and who was wrong. To which ruling defendant excepted and further excepted to the reasons given by the court, because at the time the question was asked Pruett had only stated the conversation with Cahanin which showed a quarrel between them, and because he had a right to detail the quarrel or quarrels in order to show the dangerous and serious character of the same in order that the jury might understand why he made said remark and not draw any unfair inference therefrom, and also excepted to said reasons, because said Pruett had not given all of his reasons for making said remark, which objections to said reasons were also overruled by the court, because Pruett was permitted to go into details of quarrels had with deceased and was permitted to state everything which had occurred between them and deceased at these quarrels, but the court would not permit him to recite threats which had been communicated to him previous to the killing for the reason that at the time of the killing no overt act or hostile demonstration on the part of said deceased had in the court's opinion been shown to exist. To which rulings defendant excepted and tendered a bill.

Bill number nine states that on the trial of the above cause, and after defendant had introduced evidence as to the overt act, the court was asked for time within which defendant could draw up a written motion, asking the court to allow evidence of previous threats and provocation and to reduce the evidence as to the overt act to writing, in case the court should not agree with defendant that an overt act, on the part of Sandoz, deceased, had been proved; that this application was refused, the court assigning as its reason that in State vs. Christian, 44 An. 954, the Supreme Court had declared that whether or not a foundation had been laid for the introduction of the dangerous character of the deceased is a matter to be decided by the trial court, whose ruling in such matter would not be reversed, unless manifestly erroneous (State vs. Barker, 46 An. 796) ; until a feasible method had been devised to bring up for review on appeal all testimony—(that on behalf of the accused to prove and that of the State to disprove the overt act), the court would follow established precedents.

The tenth bill states that defendant, having introduced the testi-

mony of himself, his daughter, Thomas R. Carroll, J. B. Donato and other witnesses, [whose evidence he considered and declared proved that Sandoz, deceased, had attempted to shoot before he (Sandoz) was shot], offered the evidence of Charles Medici, as appears in motion for continuance (annexed and made part of the bill) and which counsel for the State admitted (in order to force a trial), that said Medici would swear to if present; that this evidence was ruled out by the court upon the ground that the overt act had not been proved; that defendant excepted to this ruling and reserved a bill; that counsel for defence differed from the court as to whether the overt act had or had not been proved, moved orally (the court having previously refused to allow time for a written motion) that the evidence on the question of the overt act be taken down in writing in order that the same might be annexed to the said bill of exception, to the end that the Supreme Court might decide whether there was sufficient proof of the overt act to justify the admission of the evidence of Medici and other like evidence; that counsel contended that the overt act, on part of deceased, had deprived him of evidence which, taken with the evidence of the overt act, would have acquitted him, and contended further that the question of the overt act was a mixed question of law and fact, and should, therefore, be reduced to writing.

Appended to the bill the judge stated that in the opinion of the court no hostile act nor hostile demonstration had been shown; that, on the contrary, it was established, beyond cavil, that accused had long before deceased neared his house (that of accused) gone into the same, procured his rifle, which he pointed through the half door of his house until his victim reached a point just opposite, when the accused fired upon the deceased, the shot from which he died; that " the question of overt act or hostile demonstration was addressed to the discretion of the trial judge, and that there was no law which authorized the taking of testimony *vel non* for review by the Supreme Court."

The eleventh bill states that defendant moved the court to reduce to writing the evidence of the witnesses, Aline Pruett, Johny Savant, Joseph Boudreau, J. B. G. Donato and others, on the question of establishing the overt act; these witnesses having testified on this matter, and there being a difference of opinion between court and counsel for the accused, as to what constituted an overt act or hostile

demonstration, and whether such act or demonstration had been made by the deceased; that this request was made for the purpose of enabling the appellate court to properly pass upon the ruling of the lower court in excluding proofs of previous difficulties and communicated threats. The court stated it overruled the motion for the reasons assigned in bills of exception Nos. 9 and 10.

The twelfth bill states that on the trial of the case, after the State had offered its evidence and the defence had closed its case, counsel for the State called one Alfred Johnson, who, after saying he was an eye-witness of the homicide, was asked by counsel for the State: " State what you said and what happened?" that counsel for defendant objected, because it was evidence the State should have offered originally in making out its case, and because under the law only evidence strictly in rebuttal was permissible at said stage of the proceedings; that the question was one that called for and elicited a statement of facts on the whole case. The court overruled the objection, assigning as its reason that the evidence was offered in rebuttal of the prisoner's evidence; that the State had announced that the evidence would be to this effect and it proved to be absolutely so.

The fourteenth bill states that on the 18th September defendant filed the written motion, annexed to the bill, asking that *tales* jurors be not summoned within the corporate limits of the town of Opelousas; that the motion was overruled. The court assigned as the reason for its action that it knew of no law that would warrant such a mode of procedure; that Sec. 7 of Act No. 99 of 1896 directs the manner in which *tales* jurors should be summoned and the court complied with its requirements.

The opinion of the court was delivered by

NICHOLLS, C. J. The action of the court in overruling defendant's motion to quash the indictment was not erroneous. The motion was made too late. The facts disclosed by the evidence adduced bring the present case within the doctrine announced in State vs. Collins, 48 An. 1454. The jury drawn in this case was through the *proviso* of the repealing clause of Act No. 99 of 1896, withdrawn from the provisions of the fifth section of that act requiring publication.

The ninth, tenth and eleventh bills of exception reserved by de-

fendant are the first which we take up. From them it appears that after he had introduced the testimony of himself, his daughter, Thomas R. Carroll, J. S. Donato and others, whose evidence he declared proved that Sandoz (the deceased) had attempted to shoot before he (Sandoz) was shot, defendant offered evidence to prove previous threats made by the deceased and provocation, but that said evidence was ruled out by the judge for the reason that no overt act on the part of the deceased had been proved. That defendant moved the court that the evidence on the question of the overt act be taken down in writing in order that the same be annexed to his bills of exception to the end that the Supreme Court might decide whether there was sufficient proof of the overt act to justify the admission of the rejected evidence, but that this application was refused, the court stating that "no overt act had been shown; that the question of overt act or hostile demonstration was addressed to the discretion of the trial judge and that there was no law which authorized the taking of the testimony for review by the Supreme Court."

The court erred. Act No. 113 of 1896 authorized the accused to demand that the testimony be reduced to writing and made it the duty of the court to grant the request. It is possible that had the testimony been taken down the record would not have been placed in such a form as to have enabled us to review the ruling of the lower court; but neither this court nor the District Court are permitted to speculate upon that subject. The express statutory right granted to a defendant by the act can not be denied because the exercise of it might be barren of results in the particular case. That fact could only be tested on appeal when the record would come up.

We are of the opinion that the court erred in refusing, as shown by the eighth bill, to allow defendant when on the stand as a witness to recite threats of the deceased which had been communicated to him, on the ground that at the time of the killing no overt act or hostile demonstration on the part of the deceased h d, in the court's opinion, been shown.

The particular connection in which the evidence was sought to be made use of seems to have been overlooked. It has been held in this State that threats made by the deceased are only exceptionally admissible in evidence. Usually prior proof is required of some overt act by the party killed at the time of the homicide to warrant

the reception of testimony in regard to them, but the question was not presented in this case under the circumstances which required that a prior overt act on the part of the deceased should have been shown before evidence of communicated threats should be admissible. The particular matter then being considered was not evidence as to justification or mitigation of the homicide, but justification or explanation of the circumstances under which a certain statement made by defendant had been made. The parties had turned aside temporarily from the facts directly connected with the homicide at the time of its occurrence to consider an incidental collateral issue concerning evidence upon the trial. The State had shown by Canahan a declaration made by defendant calculated to powerfully impress the jury adversely to accused if left unexplained. The State had opened the door to the inquiry and made it imperatively necessary for defendant to show the exact facts. When it had been testified to that defendant had declared that " he intended to kill the deceased," or " that he would kill him," we think it was perfectly proper for him to explain, if he could, that if he made the statement, it was because he anticipated from threats made by deceased and communicated to him, that he would be forced to kill him in self-defence. A very different coloring would be given to defendant's expression viewed from that standpoint, from that which it would have, if permitted to rest at the point where the State wished to close the inquiry. As a matter of course, defendant in availing himself of an opportunity given him to rebut any prejudicial influence which might result from his declaration, should not be permitted to push his testimony beyond what was legitimate solely for that purpose. There was a limit to his right which the court was authorized to see was not transcended. We must assume, in the absence of any showing, what his testimony had been, or what it was intended to have been, that the court's action (other than that in respect to the excluded testimony as to communicated threats) was justified by the facts.

The exceptions of defendant in the second bill of exceptions and the argument of counsel upon it are much broader than the action of the court, referred to in the bill, called for. As we understand matters, defendant had filed a motion for a change of venue on stated grounds—this motion was fixed for trial—defendant summoned witnesses in support of his motion, who were present in court

for examination, but upon the application of the District Attorney the hearing of evidence in support of the motion was postponed until after the jury panel had been examined on its *voir dire* in order to ascertain from that examination whether a fair and impartial trial could be had. The bill is argued as if the court had then and there finally cut the defendant off from the right of examining witnesses to sustain his motion. That is not the import of the ruling, which extended only to a temporary postponement of the hearing and to a decision upon the order of proceeding. In so considering it, we find no cause of reversible error. In the Am. and English Ency. of Law, page 99, we find it laid down that where an application is made for a change of venue the court may deny the motion until it can be shown by an examination of a sufficient number of jurors whether a fair and impartial trial can be obtained or not (citing State vs. Gray, 8 West. Court Rep., Nevada, 72) * * * that there is no error in postponing the consideration of a motion to change the venue until an attempt is made to impanel a jury (citing People vs. Plummer, 9 Cal. 298; Hunter vs. State, 43 Ga. 483; Ward vs. Moorey, 1 Wash. Ter. 122).

The third bill contains a double complaint, the first being that the court did not give the accused the latitude he was entitled to in the cross-examination of the jurors when examined on their *voir dire;* the second being that after the jury had been so examined the court overruled defendant's motion to have his witnesses heard in support of the averments of his motion for a change of venue and for the purpose of rebutting any inference that could be drawn from the examination of the jurors, that he could obtain a fair and impartial trial in the parish of St. Landry.

The precise course followed in the lower court does not appear in the record. We judge, however, that the thirty jurors of the regular panel selected for the third week of the session were called and each separately examined upon his *voir dire*—questions being first propounded by the State and then by the defence—that those whose answers were of a character to show them incompetent were set aside, while those who were deemed by the court proper jurors were held in reserve to be ultimately tendered to both parties. That when so tendered on the actual formation of the jury, defendant peremptorily challenged individual jurors as they were presented; that under this proceeding the regular panel was exhausted (only six

jurors having been taken therefrom); that thereupon the court
then ordered the sheriff to bring in talesmen, who were in turn
examined and accepted or rejected until twelve jurors were found;
that in the formation of the jury in this manner the defendant
exhausted his peremptory challenges.  We do not find that bills of
exception were taken to the action of the court in respect to the
individual jurors accepted, but there is a bill covering the general
line of proceeding and touching the restriction placed upon the cross-
examination of the jurors by the defence.  The court accepted the
course adopted as having [by the fact itself that twelve jurors were
found who in its estimation were proper jurors] conclusively estab-
lished that the defendant could obtain a fair and impartial trial in
the parish of St. Landry, and limited the scope of the inquiry on that
subject to the questions propounded and answers made thereto by
the jurors and talesmen.   He excluded all testimony outside of this.
The application for a change of venue was based upon allegations
sworn to that he could not obtain a fair and impartial trial in St.
Landry because of the intense and wide-spread prejudice against him
in the public mind; that this prejudice was political and partisan, and
permeated every branch of the court; that during the last polit-
ical campaign the parish was divided into two fiercely · hostile
parties marching and countermarching through the parish—that there
were several collisions between them resulting in serious injury to
persons and property—in some cases in death.  That the contest
resulted in the election of the then presiding judge of the court and
the then prosecuting attorney.  That the district clerk and the sheriff
both belonged to the same side as the judge and District Attorney;
that political feeling and prejudice and bias were heavy in the atmos-
phere in and about the court house.   That the court (however uncon-
sciously) was influenced by that feeling was shown by the fact that
it had appointed none but partisans upon the jury commission.
That the clerk and jury commission were partisans, and that they
carried their partisan feelings into the performance of their duty,
was attested by the fact that they selected for the then term of court,
under the jury law of 1894, a grand jury panel composed exclusively
of partisans, and that on the *venire* of the petit jury drawn for six
weeks of the term there were not over half a dozen names that were
not partisans belonging to the side of the clerk and jury com-
missioners.   That defendant was an active and avowed partisan on

the side opposite to that of the presiding judge and District Attorney and the deceased was a still more active and avowed partisan of the other side—that the encounter which resulted in the homicide with which defendant was charged grew out of the election and was a direct consequence thereof—that it happened in the town of Opelousas on the day following the election and defendant narrowly escaped being mobbed at the time—that the partisan feeling referred to was directed against himself individually as well as against the party he belonged to generally; that partisan feeling was so strong and deep-seated in St. Landry that the man in the parish who was not affected by it was an exception; that under the circumstances it was utterly impossible for one accused of a crime which grew out of the last political campaign or which was closely connected with it to obtain there at that time, and perhaps for years to come, a fair and impartial trial.

The District Attorney complains of this application as being insulting to the presiding judge. There are certainly portions of it which are exceedingly objectionable; not only in respect to the judge, but as to other matters. We have purposely abstained from transcribing them. We do not think that the mere fact itself that a suitor should allege in a prosecution pending against him that the judge of the court has acted in a manner such as to have illegally prejudiced his rights furnishes ground for legal complaint, when the assertion of such a claim would be essential to his protection. The law has pointed out no method of attacking or annulling by direct action a verdict in a criminal case and a judgment based thereon for wrongful action on the part of the presiding judge in the performance of his duties. A defendant would certainly be entitled to protection at some time and in some shape or form; from the necessity of the case he would have to set up his complaints in the pending suit, and he should be allowed to introduce his testimony in support of the same. We would not expect the presiding judge to express any opinion adverse to himself in the premises, but the whole matter would fairly come before the appellate court in reaching its conclusions as to whether actual wrong or injury had been done.

As a matter of course such a complaint should contain no abusive, opprobrious or intemperate expressions. See Wharton, Sec. 49.

An examination of the motion will show that several of the matters therein charged were matters more for a challenge to

the general panel or array than for an application for a change of *venue.* They were not advanced for the former purpose. We are authorized, however, we think, to consider them incidentally in dealing with the question of the change of *venue.* Accused maintains that in view of the method of the selection of the jury commissioners, the manner of collecting the jury and of obtaining talesmen, he was illegally hampered in his effort to show that a fair and impartial trial could not be had in the parish by limiting the witnesses testifying on that subject to witnesses not of his own choosing.

Section 1023 declares that an application for a change of *venue* "may be made orally in open court or by petition in chambers, and shall be accompanied with proof under oath of the party or his attorney that reasonable notice has been given to the District Attorney of such application. Thereupo n the judge shall hear the party making the application, as well as the attorney representing the State, and, if on such hearing and examination of the evidence adduced he shall be of opinion that the party applying can not have a fair and impartial trial in the parish where the indictment is pending, the judge shall award a change of *venue* to the adjoining parish of the same judicial district, or of an adjoining district, and if possible to that in which a District Court shall next be held."

From an examination of the proceedings taken below, those on the motion for a change of *venue* seem to have been substantially merged into an examination of jurors and the empaneling of a jury. As a substantive motion and proceeding, it seems to have been lost sight of and disappeared. Accused was not permitted to offer witnesses, but was confined to the cross-examination of the jurymen and talesmen who were produced before the court. We do not think that the answers of the jurors and talesmen should have concluded the accused. He was entitled to traverse, contradict and disprove their statements if he could. As the condition of a juror's mind, in respect to his being unbiased and impartial, rests entirely upon his own assertion, his declaration on that subject surely should not close the door to an investigation and examination of facts which would tend to show that the juror either unconsciously or designedly was not stating the truth. Before reaching his conclusions upon the motion for a change of *venue* we are of the opinion the court should have heard the witnesses whom the accused sought to have testify. As the extent of the line of cross-examination of the jurors which

the defendant was permitted to make was made a subject of complaint in this same bill of exception, we take occasion to say that in our opinion the court narrowed the examination too closely. It was particularly desirable under the averments of the motion to change the *venue*, that the jurors should be subjected to a very rigid test. As the testimony which defendant sought to introduce was excluded we are unable to say whether he was entitled to a change of *venue* or not. All that we can do, as matters stand, is to set aside the court's action on that subject and reserve to defendant, as we do hereby reserve to him, the right to renew his motion for a change.

Complaint is made in the fourth bill that the court "refused on the day the case was fixed for trial to allow additional compulsory process or *alias* subpœna to issue to a witness named Charles Medici, to have return made upon said process and to grant time until this should be done, defendant objecting to go to trial." Defendant in the bill states that he had on the 14th September (when the case was fixed for trial for the 17th) applied for and obtained compulsry process for the witness, who was living at the time in the parish of Ascension; that the *subpœna* had been received by the sheriff of the latter parish on the 16th, but he made no effort to serve the same, as would appear by a letter from him of that date to the clerk of the St. Landry court. Directly connected with this complaint is that urged in the fifth bill, that the court refused to grant defendant a continuance to obtain the testimony of the witness Medici, as asked for on the grounds urged in his affidavit and motion therefor. Both applications were denied on the ground that the State stood ready to admit and did admit that the witness if present would testify as stated in the affidavit for the process, and that under such an admission defendant was legally called upon under the provisions of Act 84 of 1894 to go to trial. We find in the record the letter of the sheriff of the parish of Ascension referred to. In it he says that "he returned to the clerk the notices sent for service; that in the first place the person named was unknown to him, and in the second place, even if he could make service, the person would find it impossible to be in Opelousas by 10 o'clock A. M. on the 17th—that he (the sheriff) had received the notice only on the 16th of September." There seems to have been no attempt to secure the service—and no return was made upon the subpœna by the sheriff. It is stated in one of the bills that the

State vs. Pruett.

original application for a subpœna was annexed to it, but we do not find it attached as declared. It is useless for us to decide whether the action of the court, taken on that occasion, was or was not correct, as the case is remanded on other grounds, and it is not likely that this particular question will arise again under precisely similar circumstances. We notice that in the application for a continuance Medici is referred to as "formerly" of the parish of Ascension, and that there is no declaration or statement where he then was. Whether as a fact Medici ever lived in the parish of Ascension is uncertain—the fact is alleged, but it is nowhere sworn to. It was the duty of the defendant to have shown affirmatively the residence of Medici, or that there was good reason to believe that the witness could be reached by subpœna at the place to which it was directed. It would have been of no practical use to have issued a second subpœna to a person in Ascension parish who had "formerly" been a resident there. However irregular the action of the sheriff of the parish of Ascension was, defendant evidently adopted his conclusion that the witness was no longer to be reached there. We are of the opinion that when this case was fixed for trial the defendant should at once have called the special attention of the court to the fact he would require on his behalf the presence at the trial of a material witness who was in another parish and insist that in fixing the day of trial sufficient time be given to the sheriff for a proper search for the witness, for due return on the process issued and for the witness to comply with the orders of court. On proper showing made we do not presume the court would have pressed the case to trial.

We think a defendant when he has counsel should, as soon at least as he is indicted, take steps to ascertain where the various witnesses whom he will need live, or where they can be reached, and that he can not properly rely for the purposes of a continuance upon the discovery of that fact through mere experimental process to be sent to sheriffs of parishes in which it is possible the witnesses may be found. Such a practice would lead to great abuse.

A question has been raised as to whether a person charged with crime, who would (but for the provisions of Act No. 84 of 1894) be entitled to a continuance of his case in order to procure the attendance on his behalf of an absent witness, can, in view of Art. 8 of the Constitution, be legally and constitutionally forced to trial (under

authority of the act mentioned) by an admission on the part of the District Attorney that the witness, if present, would testify to the facts stated by the accused in his motion for process or for a continuance. Article 8 of the Constitution declares that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor.

In Act No. 84 of 1894 it is enacted that "in all criminal cases whenever either the State or the defendant asks for a continuance on the ground of the absence of an important witness, the other shall be entitled to an immediate trial on admitting that if said absent witness were present that he would testify as stated in the affidavit made for a continuance, but in no case shall the defendant be required, in order to get a trial, to admit that the statements made in the affidavit for a continuance."

The right of an accused person to insist upon the presence in court of the witnesses material to his defence has been frequently the subject of discussion and adjudication. Many authorities will be found collected in Rice's Work on Evidence, Vol. 3, Chap. 19. "Of the evidence necessary to secure a continuance" (Sec. 114). "Right not affected by admissions of opposite party," also in the same author, Chap. 30, pages 269 and 270.

We are unwilling to pass upon the constitutionality of a statute unless imperatively required to do so. No such necessity exists in the present case. We content ourselves with saying for the present that the law is at least in derogation of common right, and that recourse to it should be avoided if possible.

The twelfth bill comes to us under contradictory statements, made by the court and counsel. Not having the evidence taken in the case before us, we accept as correct the court's declaration that when the testimony objected to was offered the State announced that it was offered in rebuttal of the defendant's evidence, and that when introduced it was actually in rebuttal. We have stated heretofore (State vs. Spencer, 45 An. 1) that, in our opinion, justice to an accused party requires that the State should at once offer on its side all the evidence which it has and not reserve its real or main attack until after defendant had closed his case. That there were, however, so many reasons why, under special circumstances, this course should be departed from, and so many occasions on which such departure

from it would be proper, that it could not be invoked as a matter of legal right. That this matter would have to be left in each case to the sound judicial discretion of the court, which, having knowledge of the general rule, would protect the defendant by enforcing it, unless by reason of some exceptional state of facts.

In Rice on Evidence, Vol. 3, Sec. 218, it is said: "The rule is well settled that in rebuttal the people are restricted to evidence controverting the facts proven by the evidence of the defence and that no evidence confirmatory of the original case can be introduced by way of rebuttal, even though it clearly establishes the prisoner's guilt." (McLeod's Trial Pamphlet, p. 222; Rex vs. Hilditch, 5 Car. & P. 299; Rex vs. Stimpson, 2 Car. & P. 415; Brown vs. Giles, 1 Car. & P. 118; 2 Philips Evidence, Note 500.) * * * "No rule for the conduct of a trial is more familiar than that the party holding the affirmative is bound to introduce all the evidence on his side before he closes." (Hastings vs. Palmer, 20 Wend. 225.) "He must exhaust all his testimony before the testimony on the opposite side can be heard." (Ford vs. Niles, 1 Hill, 301; Rex vs. Stimpson.) "He can afterward introduce in rebuttal only—rebutting evidence in such cases means not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but evidence in denial of some affirmative fact which the answering party has endeavored to prove." (Silverman vs. Foreman, 3 E. D. Smith, 322; Rex vs. Stimpson, *supra*.) "These rules may in special cases be departed from in the discretion of the trial judge; but a refusal to depart from them is no ground of exception." (Marshal vs. Davies, 78 N. Y., 414.) * * * Rice, after having quoted the opinion of Lumpkin, Judge, in Walker vs. Walker, 14 Ga. 242, 250, wherein he expressed himself in favor of the reception at any time of additional cumulative and corroborative evidence of facts previously proved or which tends to strengthen and add force or probability to such evidence—pushes this matter to its extreme length, saying: "So largely is the admission or exclusion of evidence not strictly in rebuttal a discretionary matter with the court that we are justified in formulating a general rule that material testimony in a case should be admitted at any time before the formal submission of the case to the jury. The presiding judge in the exercise of this discretion has absolute immunity from all review unless it should clearly appear that there was a wilful abuse

of the discretion confided to him.   Of course where important testi-
mony is withheld with the obvious purpose of placing either party to
a disadvanage the trial  court  would  be  abundantly justified  in
refusing its admission."   (Gaines vs. Commonwealth, 50 Pa. 319;
Dozier vs. Jerman, 30 Me. 216, 220; Huntsman vs. Nicholls, 116 Mass.
521;  Morse vs. Potter, 4 Gray, 292; Marshal vs. Davies, 58 How.
Pa. 231.)

Fourteenth Bill.  The  court in its reasons for refusing to grant
defendant's request [made while the jury was being examined gener-
ally on their *voir dire*],  "that  tales  jurors be not' summoned within
the town of Opelousas," stated  that it knew of no law which would
warrant such a  request.   That Sec. 7 of Act No. 99 of 1896 directed
the manner in  which talesmen should be  summoned and the court
had complied with its requirements in its order on the subject to the
sheriff.   The  order referred to was that " the sheriff of St. Landry
will go out into the town of Opelousas and  summon  twenty-five or
thirty talesmen  jurors,  securing if possible persons living in the
country and remote from  the town.   He will go through the town
and near the railroad at the cotton yards and endeavor as above
stated to secure the attendance, if possible, of jurors living outside
the corporate limits.   Upon  his failure to secure these he will sum-
mon jurors in the town from outside this court room."

The seventh section of Act No. 99 of 1896 declares that whenever
the District Judge thinks proper  he  shall require the jury commis-
sion to select  additional  jurors  for  service either as regular jurors
for service, or as  talesmen,  pursuant  to  formalities prescribed in
Sec. 5 of this Act,  and  they  shall  be  summoned without delay or
within the time  the said judge  requires; but nothing shall be con-
strued so as to  limit  the  right of the  judge  in criminal matters to
order the summoning  of talesmen  from  among  the bystanders  or
from any portion of the parish remote from the scene  of  the crime
which the judge may designate.

This bill is not pressed very  strongly,  possibly  because of appel-
lant's reliance upon his bill of exception  covering the refusal of the
judge to hear testimony upon the motion to change the venue.   The
lawmaker  evidently presumed that  there would exist a greater state
of excitement at or near the  place of homicide than there would at
a distance, and therefore intimated that, as a rule, it would be well
that talesmen  should be  drawn  from places remote from the scene

of a homicide. We do not look upon the provisions of the seventh section as mandatory upon that subject, without regard to the facts of any special case. A certain discretion has to be left to the court, to be exercised by it in such manner as that wrong and disadvantage be worked to neither State nor to the accused. The bill is not pressed in a way to call for special action upon it.

We do not pass upon a number of bills of exception which we find in the record, for the reason that some of the matters complained of are not likely to occur on the next trial, and others are presented to us under conditions such as to make it difficult for us to properly deal with them.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury and the judgment of the District Court based thereon, which is herein appealed from, be and they are hereby set aside, annulled, avoided and reversed; and the cause is hereby remanded to the District Court for further proceedings according to law.