BREAUX, C. J.
The grand jury of the parish of Rapides found a true bill against the defendant on the 25th day of April, 1910, charging him with having feloniously shot and wounded with a dangerous weapon on the 2d day of the same month and year one Joe R. Ball, with the felonious intent of killing and murdering him.
He was placed on trial on the 27th day of June, 1911.
On the 29th day of that month the jury found him guilty, and on the 7th of July following the court sentenced the accused to be confined at hard labor in the state penitentiary during six years and four months.
From this sentence he appealed.
The questions for decision are before us as set forth in a number of bills of exceptions.
First Bill of Exceptions.
[1] In overruling the motion for a new trial, the presiding judge stated that, according to his recollection of the evidence on the former trial (this case had been pre-' viously tried, and on appeal to this court it was remanded; see same title, 128 La. 37, 54 South. 415) three of the witnesses, naming them, had testified to the facts that the defendant intended to prove by the absent witness, and for that reason he overruled the motion.
The presence of a witness residing in Rapides not far from the courthouse, who was at the time temporarily in Alabama, it was stated, in the motion for a continuance, would, if the continuance were granted and his presence obtained, enable the defendant to prove on the trial that Ball, the one who was shot and wounded, had admitted to him (the absent witness) that:
“In the first meeting in the woods, when Ball cursed and abused him, defendant, until he (Reeves) had begged and cried ‘like a whipped child’ that he, Ball, had also rubbed his gun in his face.”
The judge at some length has given his reasons for refusing to grant a new trial. He recapitulates the evidence as testified to on the trial, and positively states, at the end of the summary of the evidence, that the prosecuting witness, Ball, was not the aggressor ; that there was not the least necessity to shoot and attempt to kill under the law of self-defense.
In the motion for a continuance, with reference to this absent witness (G. W. McClanny, on account of whose absence defendant had asked for a continuance at the time that the case was called for trial), defendant avers that, if the case had been continued or reassigned for 10 days, he would have secured his presence, and that this witness would have contradicted the prosecuting witness Ball, and would have proven that Ball had made a deadly assault with a gun on the defendant on a prior occasion, and that this witness would have corroborated the accused.
In important particulars the court’s per curiam did not agree with the affidavit of the accused. The judge was not only convinced that the accused was the aggressor. His conviction, as expressed, goes further, and leads to the conclusion that he was equally as convinced that the case had been fully and fairly tried, and that the testimony of the absent witness would only have been cumulative. What else can be inferred from the following part of the per curiam?
“The witnesses Murray, Stiley, and Poest had substantially testified to the same facts on a former trial and were present in court as witnesses.”
And the fact had led the learned judge to conclude that the testimony of the absent witness would have been at most cumulative.
But this is not the only ground for refusing the continuance.
There is ap affidavit of record in which a witness contradicts his own daughter, the *719 wife of the absent witness, regarding the date of the return of the witness to this state.
This witness is very confident. At the same time he also swears that his son-in-law, the absent witness, some three months ago obtained a contract of employment in Wilcox county, Ala., where he is now working, and that his absence is temporary.
The foregoing statement does not create the impression that the witness is a mere sojourner in Alabama — one who expects to return in the near future. The wife of the absent witness declared to the sheriff that he would not return before about the end of the year.
We have noted that the case was tried in June. If it was as stated by the wife, there was no good reason to expect that the witness would return within a reasonable time for the trial.
We do not attach the greatest importance to this return based upon the statement of the wife. None the less, it shows that those who were in a position to know did not think that there would be an early return of the witness. That was the opinion of the district court. We have no reason to think that it is not correct.
Moreover, the state’s position is that there was want of diligence on the part of the accused; that, although he had ample time from the date the case was assigned for trial to the day of trial to obtain the names of his witnesses, he did not timely and correctly give the name of this witness to the sheriff.
We are informed by the trial judge that this witness was not summoned as a witness in the first trial at all, and we are not of opinion that new and material evidence was expected that could not be proven by other witnesses.
As relates to the requirement of a defendant in this respect, the decision in State v. Spooner, 41 La. Ann. 783, 6 South. 879, is cited, in which it was held that an accused is not entitled to relief if he is not diligent in matter of notice to the sheriff about subpcena to be served on witnesses.
Another decision cited is State v. Pruett, 49 La. Ann. 297, 21 South. 842.
In a similar case the continuance was refused in State v. Nash and Barnett, 45 La. Ann. 1139, 13 South. 732, 734, and the court’s ruling was maintained on appeal.
Further, still, the position on the part of the state is that the testimony is not material, and that is the unavoidable inference after reading the different statements of the presiding judge.
Again, it is stated on the part of the state that jurisprudence does not give sanction to delays where the witness wanted was out of the state, and not reachable by any process, and State v. Nicholson, 14 La. Ann. 785, State v. Duffy, 39 La. Ann. 419, 2 South. 184, State v. Primeaux, 39 La. Ann. 673, 2 South. 423, State v. Nash, 45 La. Ann. 1139, 13 South. 732, 734, and State v. Pruett, 49 La. Ann. 297, 21 South. 842, are cited.
The defense confidently cites State v. Mills, 123 La. 781, 49 South. 523, as being absolutely controlling.
We do not yield to that length to the force of that decision. The facts were different.
In the cited case the judge had not stated in what respect there was want of diligence. Here the facts and circumstances under the eye of the court led the court to the conclusion that there was want of diligence. In this it does not appear that he erred.
[2] And lastly upon this point, motion for continuance.
Motion for continuance, when refused, will not be interfered with except in a clear case of abuse. State v. Murray, 111 La. 688, 35 South. 814.
It will not be reversed unless arbitrary and *721 prejudicial. State v. Satcher, 124 La. 1015, 50 South. 835.
See, also, State v. Clay, 121 La. 530, 46 South. 616; State v. Pointdexter, 117 La. 380, 386, 41 South. 688.
Bill of Exceptions No. 2.
[3] This bill was very similar to No. 1. The defendant before trial moved to have the case assigned for another day of the term.
The judge in his per curiam states that there was no occasion for reassigning the case; that the reassignment would have been in effect a continuance, as the court’s adjournment for the term was to be in a few days; that the defendant had had ample time to write to his witness in Alabama. The judge, going fully into the details, states that the district attorney offered to admit the testimony of the absent witness; and the judge ends the long per curiam relating to the facts of the case with the statement:
“If a continuance can be obtained of right for an absent witness in another state, to prove by said witness what the prosecuting witness said to him, the witness (the judge states that that was the purpose) — parentheses ours — what he said and what he did some two years before, then it will be impossible to force a trial in any case at the first term of the court. Besides (said the judge) — parentheses ours — Mc-Clanny was not summoned on the first trial of the case, although he lives within three miles of the accused.”
Bill of Exceptions No. 3.
[4] Defendant moved to quash the venire and set aside the jury on the ground that the procés verbal of the deliberations of the jury commission was illegal by reason of the fact that the deputy clerk (the clerk being ill) acted as clerk in place of the clerk.
The act provides:
“Shall exercise all the powers delegated to the clerk.”
If the clerk is ill, the chief deputy clerk can act.
Act 220 of 1902 confers the authority.
The question has already received consideration, and, as the eases are decisive, we refer to them as affording sufficient answer to the argument of learned counsel. State v. Edward Johnson, 47 La. Ann. 1092, 17 South. 480; State v. Thomas, 50 La. Ann. 148, 23 South. 250.
It does not in the least appear that fraud has been practiced, or some great wrong committed, in the selection and summoning of the jury that would work irreparable injury. Section 15, Act 135 of 1898.
[5] But the defense contends with earnestness and ability that after the district judge, on his own motion, placed the deputy clerk upon the stand, to the end of curing defects of the procés verbal so as to prove the inability of the clerk to discharge his function as jury commissioner, and the necessity of allowing the deputy clerk, the privilege of cross-examination should have been given to the defendant. The defense was that defendant was denied that pfivilege, and that he was prevented from cross-examining the deputy clerk.
If that position were sustained throughout, it would present a ground that would require the remanding of the case.
It is true, as contended, that the district judge did rule that cross-examination should cease in so far as related to grounds not alleged in the motion to quash the venire.
The defendant must be held to his grounds of defense, even on cross-examination.
Under the guise of cross-examination, he cannot prove a state of facts which has never been alleged in the motion to quash.
Defects can be proven if a procés verbal is attacked and the illegality of the proceedings of the jury commission shown, but they must be alleged.
[6] The statute has broadly provided against annulling the action of a jury commission.
“Fraud” or “wrong committed” is the expression used. They are not proven. As *723 to the necessity of allegations on that score, see act cited supra.
Although we have not detailed and dwelt on each proposition advanced by learned counsel for defendant, we have sought to find wherein the accused has been wronged.
The decision in State v. Feazell, 114 La. 533, 38 South. 444, confidently relied upon by the defense, did not go to the extent of holding that, despite the sweeping law before cited upon the subject, it could be disregarded and a verdict decreed null and void because the jury has not been drawn strictly in accordance with law, or because of the merest technical omission in the drawing.
Bill of Exceptions No. 4.
[7] Procés verbal prepared same time pri- or to meeting of jury commission is the point urged by defendant.
The ground of the bill on this point is covered by the section of the act just above cited.
By the way, it is not entirely as stated by the defense in the above proposition.
This ground, or one very similar, was considered and decided in State v. Curtis, 44 La. Ann. 322, 10 South. 784. It was decided in that case that the clerk might call on one of his deputies to write names of jurors on slips of paper; that is, on the supposition that everything is done in good faith, and no attempt made to impose upon the rights of any one.
Able counsel for defendant, while admitting that a procés verbal may be made under the supervision of the clerk by an amanuensis, stoutly urge that this court has never held that the clerk could have an employe copy a procés verbal long prior to the actual sitting of the commission.
We take it that the heading of the procés verbal was written before the commission, and that was the extent of the ex parte act.
Taking the point and the facts together, under well-settled jurisprudence, we would not feel justified were we to set aside the verdict of the jury on this ground.
In regard to the allegation relating to fraud, other decisions will be found referred to in Marr's Criminal Jurisprudence, p. 494.
Bills of Exceptions Nos. 5, 7, 8, and 9.
[8] These bills will be considered and passed upon together, for the reasons that we have not found that there is any merit in them.
The only point which admits of some discussion is in regard to the communicated threats.
According to his honor, the district judge, the prosecuting witness was not the aggressor and committed no overt act except the one act of retreating from the presence of the defendant in obedience to his order, and it was then that he was shot.
As there was no overt act by the prosecuting witness, the threats made were not admissible, particularly as they referred back to a number of years, or, at any rate, were not very recent.
As we take it, there was bad blood between these parties. Much was said that should not have been uttered.
Much of this talk went to the jury, it is stated.
It is said that the state did not object to the accused’s testimony given to prove that' a number of witnesses had communicated threats to him, and, furthermore, that the statement of prosecuting witness Ball, about Reeves, the defendant, was given to the jury by the witnesses to whom they were made.
Bill of Exceptions No. 6.
[9] This exception presents a point carefully set forth by learned counsel. It relates to a difficulty that had taken place between defendant and the prosecuting witness Ball.
The main purpose in offering this testi *725 mony was to corroborate the defendant as a witness.
The district judge excluded the testimony for the reason that a defendant witness cannot corroborate his statements by showing that two years prior he had made similar .statements.
We hold self-serving declarations are not admissible.
The testimony as relates to this bill does not commend itself as admissible.
It is stated in the narrative of the bill on the part of the defense:
“That the evidence (in question) would corroborate the defendant because it was made to & disinterested party on the day that the trouble occurred at a time not suspicious, some two years previous to the day of the shooting, and that since there has been no meeting between the parties.”
This was also not admissible; it being hearsay. The purpose was to obtain from the person offered as a witness that which he had been told by the prosecuting witness.
It was not admissible and the testimony was properly excluded.
Bill of Exceptions No. 10.
This bill was passed over without comment.
Able and energetic counsel would not have passed that bill if in it there was any issue •of merit at all.
We therefore take up the next ground.
Bill of Exceptions No. 11.
[10] The defense objected to the language of the district attorney addressed to the jury in closing the argument for the state.
The complaint of defendant through learned counsel was that the district attorney argued to the jury that Reeves was a hog thief, and was caught red handed by Ball in the nefarious traffic in which he was engaged.
The district judge in his per curiam said that the statement of the district attorney was that they were not trying the defendant, Reeves, “for hog stealing, but that the facts stated otherwise were about correct."
The other facts are that the district attorney said that the defendant was caught “red handed by Ball in the nefarious traffic in which he was engaged.”
With the elimination of the word “hog” from the complaint, the remainder is not objectionable to the extent that would justify this court in setting aside the verdict.
In a closely contested case, as this was, things will be said that an average juror will not take too seriously.
It is only when it is evident that these utterances of the district attorney were entirely out of place, and must have exerted an influence entirely unjustifiable, that the court will act and remand the cause. Hogs had been the cause of difficulties between the prosecuting witness and the defendant. It accounts for reference made to that animal in the argument, in a case in which the defendant was charged with shooting with intent to kill and murder.
We do not think, taken as a whole, that the remarks of the district attorney were of such a nature under the circumstances as to require interference by the court.
Bill of Exceptions No. 12.
This bill takes us back to the witness Mc-Clanny.
Evidence went down without objection.
The court was requested to strike out the evidence.
The court declined, we think properly.
It is not evident that any one was taken by surprise or that an injustice was done in this respect.
Bill of Exceptions No. 13.
We have examined this bill as carefully as we could.
There was a disagreement between the district attorney and the counsel for the de *727 fense in regard to the remarks of the district attorney to the jury.
The trial judge in his per curiam said in regard to this bill of exceptions that:
“Judge Hunter, one of the counsel for the accused, referred to the former trial and the verdict of the jury (State v. Reeves, 128 La. 37, 54 South. 415), and the district attorney had a right to reply. What the district attorney said I could not hear because of the bad acoustics of the courtroom, and the district attorney was not talking very loud, and had his back turned to me, as he was facing the jury. If what the district attorney said was not correct, it had no influence prejudicial to the accused, as the evidence justified the verdict. I am sorry that I could not hear what was said by the district attorney.”
' In view of this statement of the judge, it may be concluded, we think, that no injustice was done to the defendant by the remarks of the district attorney. He, the defendant, through counsel, has given his own statement of what was said. It does accord with the statement of the district attorney.
Taken as a whole, we will have to let the verdict remain as it is. State v. Johnson, 119 La. 130, 43 South. 981.
Bill of Exceptions No. 14.
[11] The next bill of exceptions is numbered 14.
The point here also is in regard to the language of the district attorney in his address to the jury in his closing argument.
He said that “under the evidence the verdict was demanded.”
As stated by the district judge in the per curiam, the language was not legally objectionable. It afforded no good ground for complaint. The inference is reasonable he thought that there was ground for conviction.
He gave expression to the object of the prosecution he was conducting.
We have examined this case with care, and leave it convinced that there was no such disregard of law as the defendant contends.
For reasons stated, the judgment is affirmed.
PROVOSTY, J., concurs.