## No. 5058.

### E. BOEDICKER v. JOHN EAST et als.

Objection was made by defendants to the introduction of a diagram marked A, on the ground that, in an action of boundary, an official and authorized survey only can be made the basis of proceeding, and that the diagram being a private instrument or act of the plaintiff, is inadmissible. The court a qua admitted the diagram to be used by the witnesses on the stand to show the locus in quo, and the boundary in dispute. This ruling was correct under the pleadings. The plaintiff had the right to show the existence and locality of the alleged ancient line of division between the lands of the parties by parol evidence, and the diagram was admissible to enable the witnesses to render their testimony intelligible to the court and jury.

The objection to the admission of evidence showing that John East had pointed out to plaintiff in 1871, the line in question as the established boundary, was not well founded. John East is one of the defendants, and the husband of Frances East, the owner of the land, and seems to have acted for his wife.

A bill of exceptions was taken to the admission of testimony introduced by the plaintiff to disprove a statement made by one of his own witnesses. The testimony was admissible. It was offered not to impeach, but to rebut. This court understands the rule to be, that although a party introducing a witness is not permitted to impugn his character for veracity, and to show that he is not worthy of belief, he may nevertheless introduce evidence to rebut a statement made by the witness as to a particular fact.

APPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Cole*, J. Jury trial. *Kernan & Lyons, Kilbourne & McVea*, for plaintiff and appellee. *K. A. Cross & D. C. Hardee* and *C. P. Defee*, for defendants and appellants.

TALIAFERRO, J. This action was instituted by the plaintiff to prohibit the defendants from encroaching upon his land in disregard of the ancient boundary line established between their tracts, and to recover damages for the wrongful encroachment so made by the defendants upon his premises, and to have the alleged ancient boundary line between those tracts recognized. The plaintiff proceeded by injunction against defendants who disregarded the order, and the plaintiff sued out a second injunction which the defendants succeeded in having dissolved by entering into bond. From the order dissolving the injunction the plaintiff appealed. This court, in March, 1872, annulled the order and reinstated the injunction. 24 An. 154.

14

The case was tried before a jury, which returned a verdict in favor of the plaintiff, recognizing the ancient boundary line delineated upon a diagram in the record, designated by the letter A, and awarded the plaintiff eight hundred dollars damages. From this judgment the defendants have appealed.

In an amended answer to the appeal, the defendants pleaded the prescription of five, ten, twenty and thirty years.

The decision of this case depends mainly on questions of fact. Before proceeding to consider the evidence, it will be proper to examine several of the various bills of exceptions found in the record. Objection was made by defendants to the introduction of the diagram marked A, on the ground that in an action of boundary an official or authorized survey only, can be made the basis of proceeding; that the diagram being a private instrument or act of the plaintiff, is inadmissible. The court admitted the diagram to be used by the witnesses on the stand, to show the *locus in quo* and the boundary in dispute. We think the ruling correct under the pleadings.

The plaintiff, as we understand his petition and supplemental petition, is not suing to have the boundaries of the parties established as a matter not distinctly and satisfactorily understood, but rather to restrain the defendant from infringing upon his rights in an illegal and unwarrantable manner by interfering with him in the construction of a fence along the ancient and well defined boundary line between their lands, by illegally causing his laborers and employes to desist from the work of building the fence, and by forcibly crossing the division line between them and occupying about one hundred acres of his cleared land, and that in disregard and violation of the first injunction he had to resort to, to preserve his rights. He prays that the alleged ancient division line be recognized as the boundary between the two tracts. Under these allegations we think the plaintiff had the right to show the existence and locality of the alleged ancient line of division between the lands of the parties by parol evidence, and that the diagram was admissible to enable the witnesses to render their testimony intelligible to the court and jury.

The plaintiff in his own testimony, offering to prove that after his purchase of the land, John East, one of the defendants, pointed out to him in 1871, the line in question, as the established boundary between the tracts, objection was made that as to Mrs. Frances East, the owner of one of the contiguous tracts, such statements were *res inter alios acta*, and could not affect her. The court admitted the evidence on the ground that Mrs. East's ownership of the land was not perfected until July, 1872, the time of the registering of the adjudication of the land to her in March, 1872, at sheriff's sale; that it only took effects a

against a third party, from the time it was recorded. The testimony was properly received. John East is one of the defendants, and the husband of Frances East, the owner of the land, and seems to have acted in this controversy for his wife.

A bill of exceptions was taken to the admission of testimony introduced by the plaintiff. to disprove a statement made by one of his own witnesses. From the judge's addendum to the bill it appears that a witness, introduced by the plaintiff, volunteered the statement that the plaintiff Boedicker, told him the portion of land in controversy belonged to East; that this statement was not made in answer to any interrogatory put to him, and that the court admitted the testimony not to impeach but to rebut.

The testimony was admissible. We understand the rule to be that although a party introducing a witness is not permitted to impugn his character for veracity, and to show that he is not worthy of belief, he may nevertheless introduce evidence to rebut a statement made by the witness of a particular fact.

We learn from the record that the plaintiff's land, as far back as 1833, was owned and occupied by one W. D. Carter; that this occupancy was continued by him for a number of years, and after he left the place, that it continued in the possession of his wife until her death, in 1862; that it was sold at private sale in 1867, purchased by Kernan & McVae, and by them sold to Boedicker, the plaintiff, in 1869. The contiguous tract owned by Mrs. East, was purchased by her husband, John East, one of the plaintiffs, from Mrs. Barksdale in the year 1857, he having occupied the plantation the year previous under a lease. In the year 1851 or 1852, W. D. Carter laid off a road on the division line, built a fence and dug a ditch along this line. One of the witnesses, Gray, lived on the Barksdale place from 1849 until 1856, the year that John East occupied it under a lease. Gray and Kirkland cultivated the Barksdale place adjoining Carter's during several years. They say in their testimony that Carter cultivated up to the line. They recognized the line as the correct and proper division line between those tracts. Kirkland says that Carter cultivated up to that line, and that the land was cultivated up to that line up to the death of Mrs. Carter in 1862. Jim Moore, a freedman who was owned by Carter, was on Carter's place from 1833 until 1863, a period of thirty years. He testifies that the line along which Carter in 1851 or 1852 laid off the road was run by a United States surveyor named Bates, but does not state the time; says that the fence was built ten feet inside of Carter's line to leave room for a road; that he, the witness, laid off the road with a plow; "that the fence built there by Carter remained until the war; that some part of the fence was there

in 1871; that the road was still visible, badly washed in places, the remains of the bridge still on the bayou, the fence now grown up with cane, pieces of rail still there." This witness says the ditch was made as soon as the road was completed; that when East came there, he built his fence on the other side of the road made by Carter; that the boundary line where the old fence is now, was made there before Mr. East bought the place where he now lives; that witness remained on the Carter place several years after Mr. East moved on the adjoining place; never heard of Mr. East claiming any land on the opposite side of the road or across the road as laid out. States that when John East or Mrs. Frances East bought the adjoining place, he, Mr. East, put his fence also on the line laid out by Mr. Carter, leaving sufficient space for a road.

Dr. John B. Whitaker states that he has lived within a few miles of the Carter place from childhood; knows the road as the line established by the surveyor, Bates, with whom witness was well acquainted; does not remember distinctly the date of the fixing of the boundary line, but is positively certain it was more than twenty years ago; was present while the survey of the line was being made; knows that Mr. Carter and the community around considered the road as the boundary line; that Mrs. Carter offered to build a house as a residence for witness anywhere on her side of the boundary line between B and E; never heard any question about the ownership of the land in controversy till since the institution of this suit between the plaintiff and the defendant.

On the part of the defendant, a diagram marked K, was introduced, and in connection with it the testimony of Farrar, a surveyor, who made it. The purport of this evidence is to show that the diagram A is incorrect. This witness admitted that he made the diagram K, by getting a copy from the parish map of the bearings and distances of the whole diagram, except the line A B, in red ink. He admitted that he knew nothing of the ownership of the lands nor of the claims except what Mr. East told him. Atkinson, a witness for defendant, knew the lands since 1849; heard Barksdale say he did not regard the "new road" as the boundary line; that a great many did not regard it as the boundary line, but does not know that everybody did not so regard it; that Carter exercised no possession of the land previous to the years 1852 and 1853, when he was cutting wood from the land for sugar making; that he acted like a man who was cutting off the timber merely for wood. This witness, the surveyor and Zackery, are the only witnesses on the part of the defense, except the defendants themselves. John East states that Carter obtained permission from him to cut timber from the land in dispute for wood, to be used in

boiling sugar, and that subsequently he gave the same permission to Mrs. Carter; that both Carter and his wife proposed to buy the land in dispute from him; that he did not consider the road as it now runs as the dividing line. The testimony of Dr. East, a son of John East, and one of the defendants, is in the main confirmatory of that of his father. The testimony of Zackery has no bearing upon the question of the division line.

We think it is established that certain laborers of the plaintiff, while engaged in constructing a fence for the plaintiff along the division line, were threatened and made to desist from their work by John East. The plaintiff swears that, in consequence of this conduct of East, his laborers left his place, and he failed that year to make a crop in consequence. The testimony of Zackery, who it seems was one of the plaintiff's employes, confirms the statement of the plaintiff in regard to the laborers leaving his place, but this witness denies that the defendants caused him to leave the plaintiff's employ. John East himself admits that, in passing by where the laborers were at work on the fence, he pointed out to them a line mark on a hickory tree, and told them, when they got there, they would have to stop.

It is clear that the testimony preponderates decidedly in favor of the plaintiff. It is shown beyond all reasonable doubt by the evidence of Moore, Whitaker, Gray and Kirkland, that the division line was established by Carter in 1851 or 1852, five years at least before East bought the Barksdale tract. No objection, to the knowledge of these four witnesses who lived, one of them on the Carter place and the others in the close vicinity of it for many years before East came there, was ever made to the location of this line by Barksdale, or any prior owner of the tract now held by Mrs. East. Neither was any objection to it ever heard of by them as being made by East, after he bought and occupied the tract now owned by his wife. More than that, their evidence is to the effect that East himself always recognized the line as the division boundary line between the two tracts. The claim he now sets up is shown to be of quite recent origin.

The plea of prescription set up by defendants is unavailable. Their demand of one thousand dollars in reconvention was properly rejected.

We think the decision of the court a qua was properly rendered in favor of the plaintiff.

Judgment affirmed.