(38 South. 584.)

No. 15,579.

STATE v. BOICE.

(May 8, 1905.)

CRIMINAL LAW—WITNESS—CROSS-EXAMINATION—IMPEACHMENT OF WITNESS.

1. While much latitude is permitted to the defense on the cross-examination of state witnesses, counsel is not allowed to ask a question which assumes that a certain fact had been testified to, when such was not the truth.

2. While the state cannot impeach its own witnesses, it is not committed to every statement which is made by them. It can explain or place before the jury, through other witnesses, the exact facts as to matters so testified to. State v. Vickers, 18 South. 639, 47 La. Ann. 1574; State v. Pruett, 21 South. 842, 49 La. Ann. 283–291; State v. Duplechain, 26 South. 1000, 52 La. Ann. 448.

This may be done, in the interest of justice, with the leave of the court, after the state has closed its case.

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

Henry Boice was convicted of manslaughter, and appeals. Affirmed.

Paul W. Roussel and Joseph Benjamin Derbés, for appellant. Walter Guion, Atty. Gen., James Porter Parker, Dist. Atty., and Henry Mooney, Asst. Dist. Atty., for the State.

NICHOLLS, J. Defendant, indicted for murder, was found guilty of manslaughter, and sentenced to imprisonment at hard labor in the State Penitentiary for 10 years. He has appealed. His first complaint is that, while cross-examining a witness for the prosecution, the court, on objection of the district attorney, refused to allow defendant's counsel to ask the question:

"Where did those scissors come from, which were found next to the body of Maria Stevenson, in Tete Williams' room?"

It is contended that in so ruling the court illegally restricted him in his right of cross-examination. Counsel, in his brief, says:

"On cross-examination of a state witness, de-'fendant is permitted to ask leading questions, and to ask almost any question. This gives rise to a wide scope in the examination."

The reason assigned by the district judge 'for not permitting the question to be asked was not that the question asked was touch-'ing matters not testified to by the witness ·on direct examination, but because the question assumed that a certain fact had been 'testified to, when such, in point of fact, was 'not the case. The court's statement in re-·spect to the matter is that this was the particular objection made to the question, and "that it was maintained because up to 'that time there was no testimony before the ·court showing that the scissors were found 'next to Maria Stevenson, in Tete Williams' 'room." It will be seen that the ground for ·exclusion of the question was not that which ·counsel argues it was. Unquestionably much latitude is permitted in cross-examination, but counsel cannot assume, as a basis for ·an interrogotary to a witness, that a fact had been already testified to, when in fact 'it had not. Even if the court erred, this 'would be no ground for reversal, as the matter sought to be elicited could have easily been shown by simply changing the form ·of the questions asked.

The next complaint is that, after two 'named witnesses had been examined for the prosecution and cross-examined by the defense, the state rested its case, whereupon 'the defendant was placed upon the stand in his own behalf, and his counsel closed the ·defense; that thereupon the state recalled the witnesses as in rebuttal, and the dis-'trict attorney was permitted to question them as to matters which were not in rebuttal, but which should legally have been examined into as part of the direct evidence in ·chief; that the matters testified to by these 'witnesses were inadmissible, irrelevant, immaterial, misleading, injurious, and formed 'no part of the res gestæ.

The court's statement in regard to this matter was that:

"The defendant, by cross-examining Bella Martin, a state witness, established that Bella Martin was the owner of a certain hatchet, but that at the time of the homicide this hatchet was not in her room, but had been loaned by her to some one else, who had not returned it up to that time, and, on examination of Officer Quinn, that shortly after the homicide there was a hatchet on the table in Bella Martin's room. To rebut this the state placed on the stand Henry Washington and Charlotte Washington, the purpose and object of which was to prove that Bella Martin's hatchet was not in the room where the homicide was committed at the time of its commission, but that it had been loaned out to some one else, and had not been returned. This was objected to on the ground that it was original, and not rebuttal, testimony. The court overruled the objection for the reason that the testimony offered was rebuttal, as its object was to deny a state of facts established by the defendant in his cross-examination of a state witness. But even if it were not rebuttal in its character, in its sound discretion the court had the right to allow new witnesses to be called and examined in chief, even after the defendant had closed its case, if the court felt and believed that it was in the interest of substantial justice, provided the right to cross-examine upon the facts elicited be reserved to the defendant, and provided, further, that the defendant be permitted, if he so desired, to rebut the new facts thus elicited. The right to cross-examine these two witnesses was exercised by the defendant, as their testimony, which was made part of these bills, would show, and no request was made by him to offer rebuttal testimony. The testimony could not have possibly been injurious to the defendant, as the facts established by the state by the testimony of Henry Washington and Charlotte Washington in rebuttal were corroborative of facts established by the defendant himself on the cross-examination of a state witness."

Counsel for defendant, in his brief, says:

"The witnesses Henry and Charlotte Washington (state witnesses) were placed upon the stand to testify under the guise of rebuttal testimony, while in reality it was testimony given for the purpose of bolstering up the evidence of Bella Martin, the star witness for the prosecution. The record will show that Bella Martin was asked on her examination whether she had not assaulted defendant with a hatchet, and she denied it, and, to help her out in her denial, volunteered the statement that at the time of the trouble she had loaned her hatchet to Charlotte Washington, yet, notwithstanding that assertion on the part of the witness long before the state had closed its case, the district attorney at no time thought it worth while placing the said witnesses on the stand; and it was only after the defense had closed his proof that

the district attorney, over objection of defendant, and with the permission of the court, caused the said witnesses to testify before the jury on the ground that it was rebuttal testimony. The evidence was not new to the state, nor was it brought at first by the defendant. Therefore it cannot be said that the testimony of the two witnesses, Henry and Charlotte Washington, was rebuttal to any evidence newly brought out by the defendant in his offer of proof upon the trial.

"It was not rebutting evidence, because at no time did the defendant, in his offer of proof, claim that the hatchet used by Bella Martin was hers, and to have permitted these two witnesses to testify in rebuttal as to Bella Martin's hatchet was not proper rebutting evidence. The reference was made to a hatchet. It was not said by the defense, or even intimated, that the hatchet used by Bella Martin was her property, but, on the contrary, it was inferentially shown upon the trial that the hatchet used on this occasion belonged to Tete Williams, which had been brought by the deceased to Bella Martin's room prior to his death. The court also in its curiam to the bill states that Officer Quinn testified that there was a hatchet found in Bella Martin's room, and to rebut that evidence the testimony was allowed. The judge a quo had not stopped to reflect that Officer Quinn was a witness for the state, introduced by the state in rebuttal, and it was quite a surprise when he swore there was a hatchet in Bella Martin's room, contrary to the expectation of the prosecution. It cannot be advanced as a proposition of law that the state can rebut his own witness."

The district attorney has the right, should a state witness being cross-examined volunteer a statement or make a statement in answer to a question, which if left unexplained or unrebutted, would give rise to inferences not justified by the actual facts, to place witnesses upon the stand to draw out the whole situation, in order to rebut any such unauthorized inferences. He may do so, in the interest of justice, with the leave of the court, after the state has closed its case. While the state cannot impeach the credit of its own witnesses, it is not committed to every statement which is made by them. It can explain or place before the jury, through other witnesses, the exact facts as to the matter so testified to. State v. Vickers, 47 La. Ann. 1574, 18 South. 639; State v. Pruett, 49 La. Ann. 283-291, 21

South. 842; State v. Duplechain, 52 La. Ann. 448, 26 South. 1000.

For the reasons assigned, it is ordered that the judgment appealed from be, and it is hereby, affirmed.