## SHAFFER v. SOUTHERN BELL TELE-PHONE & TELEGRAPH CO. et al. *
### No. 15072.

Court of Appeal of Louisiana. Orleans.
April 15, 1935.

James C. Henriques and Gordon Boswell, both of New Orleans, for appellants.

Harvey Peltier, of Thibodaux, and Jno. E. Fleury, of Gretna, for appellee.

JANVIER, Judge.

Thomas A. Shaffer and his wife received injuries in a collision between an automobile owned and driven by Shaffer and another car owned by Southern Bell Telephone & Telegraph Company and driven at the time by John R. Catoire, who was acting within the scope of his duties as an employee of the said telephone company. About four months after the accident, Shaffer's wife died, leaving, other than her husband, no "survivors," who, under the provisions of article 2315 of the Civil Code, are entitled to prosecute claims for such injuries and damages as Mrs. Shaffer might have been entitled to claim had she lived, and, therefore, Shaffer, alleging that the death of his wife resulted from the said accident and asserting that the accident resulted from the negligence of the said Catoire, seeks recovery for physical injuries sustained by him; for the damage caused him by the loss of his wife and for such items of damage as his wife might have recovered had she lived. He also seeks judgment for an amount which he alleges represents the damage sustained by his automobile and for the medical and other expenses which were necessarily incurred as the result of the injuries of himself and of his wife.

At about 7:30 p. m. on February 10, 1933, in what may be termed a "head-on" collision at a point on the road along the west bank of the Mississippi river and only a very short distance above Westwego, the two automobiles met. The Shaffer car was going up the river and the other car in the opposite direction.

Shaffer alleges that as Catoire approached, after for a short distance driving his car back and forth in a "zigzag" fashion across the road, he suddenly swerved it to the left, or wrong side, and that it crashed into the Shaffer car, which had been driven as far as possible to the right side of the road and had

been brought almost to a stop in an effort to avoid the on-coming Catoire car.

The defendants are Catoire, the operator of the car, which is alleged to have been the offending vehicle, and the corporation which is the owner of the said car and the employer of Catoire.

Defendants deny that the collision was caused by or contributed to by any negligence on the part of Catoire and allege that it was Shaffer's negligence which produced the unfortunate result and that this negligence consisted in driving at an excessive speed, in not maintaining proper control over his car, and particularly in that he, Shaffer, "while so driving in a curve * * * swerved over on to the wrong side of the road and there collided with defendant's car."

Defendants also aver that, if Catoire was in any way negligent, Shaffer's contributory negligence should bar recovery, and they also maintain that, if it be held that Catoire's negligence was the proximate cause of the accident, Mrs. Shaffer's death resulted from natural causes and not from the accident, and they contend that, for this reason, in any event, there can be no recovery for her death.

In the district court of Jefferson parish there was judgment for plaintiff in the sum of $10,223.25, of which, according to his reasons for judgment, the district judge fixed $2,500 as the amount Mrs. Shaffer, had she lived, could have recovered for her pain and suffering, and $5,000 as the amount to which Mr. Shaffer is entitled in his own right for the loss of the companionship of his wife. The remainder, $2,723.25, is made up of $2,000 awarded to Mr. Shaffer for his own injuries and $723.25 for medical and other expenses, damages to the automobile, etc.

Defendants have appealed and plaintiff, claiming that the amount awarded is inadequate, has answered the appeal, praying for an increase to $22,723.25.

Of the witnesses who testified, only two actually saw the collision, Shaffer and Catoire, the drivers of the colliding cars. Mrs. Shaffer died before the trial.

There is no possibility of reconciling the testimony of the two drivers. Each insists that the two cars met on his side of the road. Shaffer said: "I saw a car coming towards me, in a very rapid speed, zigzagging across the road."

He also testified as follows: "* * * In order not to have a collision, I kept as close to the right hand side of the road as possible without getting in the ditch."

Catoire's statement places the cars on the opposite side. He says: "I was on my right side of the road * * * positive I was on the right side * * * I was on the right side, and he just come in on me, that was all * * * He was coming on my side—the left side of the road coming from Westwego."

Several persons saw the two cars almost immediately after the crash and the testimony given by them convinces us that, as a matter of fact, the point of impact was not on Catoire's side of the road, but on Shaffer's, and while it may not have been on the extreme edge of that side of the road, as Shaffer says it was, we feel certain that it was sufficiently beyond the center to show that the accident was due to Catoire's negligently failing to notice that, as a result of the double curve which he had just previously negotiated, his car had swerved across and had encroached sufficiently upon the other side to make it impossible for Shaffer to pass. While the two cars still remained in the respective positions in which they stopped, other automobiles passed and they chose to go by on that side of the road on which Catoire says the two vehicles met. It is shown that on that side there was ample room for passage, while there was none on the other. In fact, Catoire is very frank in admitting that his full attention may not have been directed upon the operation of his car. He states that he noticed the Shaffer car for the first time when it was only about 50 feet away: "My mind might have been off somewhere."

Much is made by counsel for both sides over the fact that at least one of the young men who arrived upon the scene immediately after the crash forgot that written statements had been made to insurance adjusters, or concluded that what was contained in those statements was incorrect, and gave on the witness stand versions different from those set forth in the said written statements. Each party attempts to persuade us that the true version is the favorable one.

■ But, even giving to those statements all the weight which defendants contend for, we feel that the evidence, by a clear preponderance, shows negligence on the part of Catoire and indicates that there was no course available to Shaffer which would have avoided the collision after Catoire's negligence made it imminent. We thus conclude that, on the primary question, liability vel non, the finding of our brother below is amply supported by the record.

■ The greatest loss for which claim is made is that for the death of Mrs. Shaffer and we, therefore, first give consideration to whether that loss was caused by the injuries which she sustained in the accident.

When Mrs. Shaffer died, four months after the accident, she had some time before returned to her home in Terrebonne parish and had not consulted her physician for nearly a month. Just before her death the local doctor was summoned. By chance he was the parish coroner. He saw her only about twenty minutes prior to her death, but in the death certificate issued by him appears the following:

"The principal cause of death and related causes of importance in order of onset was as follows:

"Chronic nephritis
"Chronic myocarditis
"Hypertension
"Arterio Sclerosis.

"Contributory causes of importance not related to principal cause:

"Automobile accident 3 months ago probably contributory."

It will be noted that the attending physician did not even include the automobile accident as among the principal causes.

Dr. Mattingly, who had treated Mrs. Shaffer for the injuries, but who had not seen her during the last month of her life, testified that he could not state that the accident was the cause of death, but that he believed that it was and he felt that the fact that Mrs. Shaffer had sustained an injury to her larynx and that this had become infected was the primary cause. He stated that, but for this injury to the larynx and the infection, she probably would not have died.

But it is interesting to note that, because of this particular injury and because he was not himself a specialist or expert in the diseases and infections of the throat, he had called in a throat specialist, Dr. Hume, and it is particularly interesting that Dr. Hume's testimony plainly shows that, although the partial loss of voice suffered by Mrs. Shaffer would probably have been permanent, he considered that the injury to the larynx had almost entirely disappeared when he last saw her. His evidence leaves in our minds no doubt that, so far as this injury to the larynx was concerned, there was, in the opinion of this expert, no connection between it and the subsequent death.

Counsel for plaintiff, realizing the damaging effect of the testimony of Dr. Hume, seek to show that the inflammation and the infection to which Dr. Mattingly had testified as the probable cause of death were not of the larynx itself, but of the membrane and cartilage of the larynx. A careful review of Dr. Hume's testimony leaves us convinced that he did not intend to distinguish between the larynx and the membrane and cartilage adjacent thereto, and that, in his opinion, so far as the larynx and those portions of the throat near it were concerned, the immediate effects of the injury, except the loss of voice, had disappeared.

The most disturbing fact about Mrs. Shaffer's death is that it occurred only four months after the accident. This was a coincidence which may be said to raise a suspicion of cause and effect.

In view of the fact that the specialist, who was called in to treat the particular condition from which Dr. Mattingly says the patient died, apparently did not associate that condition with the subsequent death, and of the fact that Dr. Mattingly himself stated very frankly that since he had not seen Mrs. Shaffer for a month preceding her death he could not testify as to the cause of death, and in view of the further fact that the physician who attended Mrs. Shaffer at the time of her death was not called upon to testify, we believe that the evidence is not sufficient to justify the conclusion that the death resulted from, or was substantially contributed to by the accident.

■ The amount awarded to Mr. Shaffer as survivor under article 2315, R. C. C., appears to us to be correct. Mrs. Shaffer was quite seriously injured. She was confined to the Touro Infirmary from February 10th to February 18th. Her left cheek bone sustained a compound comminuted fracture. She had what her physician terms "a traumatic section of the left side of the nose, with the loss of tissue; that is, it was cut out." She sustained several small lacerations of the face and scalp with "resultant paralysis, principally of the muscle of the forehead." She remained under the constant care of a physician for nearly three months. Her physician states that "her mental anguish was considerable * * *. The most serious of all was the injury to the larynx." This injury to the larynx resulted in the partial loss of her voice.

■ The injuries to Mr. Shaffer were not serious. He sustained a rather severe blow to the head and also injuries to his knees. He claims that he is still suffering from the injuries to the knees, but the evidence does

not sustain this contention. As a matter of fact, the record leads to the conclusion that his injuries consisted almost entirely of general contusions which were not serious. He was treated by his physician during a period of about two or three weeks. We believe that the award to him for these injuries should be reduced to $750.

The damage to the automobile, in our opinion, was correctly estimated by our brother below, who allowed $195 on this item. The remainder of the award for medical and other expenses, $528.25, impresses us as being correct.

We therefore believe that the total amount awarded should have been $3,973.25. For damages which Mrs. Shaffer might herself have recovered, $2,500; for injuries sustained by Mr. Shaffer, $750; for damage sustained by automobile, $195, and for expenses, $528.25.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by reducing the amount thereof to $3,973.25, and that, as thus amended, it be and it is affirmed; defendant to pay costs in the district court and plaintiff, appellee, to pay costs in this court.

Amended and affirmed.

LECHE, J., absent, takes no part.