## BIAGGINI v. TOYE BROS. YELLOW CAB CO. et al. *
### No. 16150.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1935.

M. C. Scharff and Martin E. Kranz, both of New Orleans, for appellant.

John P. Sullivan and David Sessler, both of New Orleans, for appellees.

JANVIER, Judge.

On April 23, 1933, Mrs. Anthony Biaggini, age 78 or 79 years, received physical injuries as the result of a collision between a Chevrolet automobile in which she was riding and a taxicab belonging to Toye Brothers Yellow Cab Company, Ync., and operated by one of its employees, who at the time, was acting within the scope of his employment.

On May 5, 1933, twelve days after the accident, Mrs. Biaggini died. Plaintiff, her surviving husband, averring that the death resulted from the injuries received in the

*Rehearing denied Dec. 16, 1935.

accident and that the accident resulted from negligence on the part of the operator of the taxicab, brought this action ex delicto against the said Toye Brothers Yellow Cab Co., Inc., seeking recovery for the loss sustained by him in the death of his wife, and also for such amount as his said wife, had she lived, might have been entitled to recover for her suffering.

The National Surety Company and its receiver, and also the National Surety Corporation, were made defendants under the allegation that either the former company or the present corporation had issued a bond or policy of liability insurance to defendant corporation. However, as to both the said defendants, the suit has now been dismissed, and only the main defendant remains in the case.

Defendant contends that the accident was not caused, or contributed to, by negligence of the taxicab driver, and that thus there is no liability in it, and it maintains that the death of Mrs. Biaggini resulted from natural causes not connected with or growing out of the accident, and that, therefore, even if there is liability, there can be no recovery for the loss sustained by plaintiff in the death of his wife.

In the district court there was judgment dismissing the suit, and plaintiff has appealed.

The accident occurred on a Sunday afternoon at the corner of Royal and St. Ferdinand streets. The Chevrolet in which Mrs. Biaggini was a passenger was proceeding up Royal street towards Canal street, and the taxicab driven by defendant's employee and containing passengers, was on St. Ferdinand street going towards Lake Pontchartrain, so that that taxicab approached the intersection from the left side of the Chevrolet.

Therefore, if the vehicles reached the corner at approximately the same time, or if the Chevrolet reached it first, that vehicle was entitled to the right of way, because of the provisions of paragraph (a) of section 15 of article V of ordinance No. 13702, C. C. S., of the city of New Orleans. We have no doubt that either the Chevrolet did reach the intersection first, or that the two vehicles reached it at the same time, because the taxicab struck the Chevrolet on its left side and near its rear end, after the latter had traversed about half of the width of St. Ferdinand street, and defendant's contention that the Chevrolet entered the intersection at great speed is refuted by the fact that that vehicle stopped almost immediately after the collision within a few feet of the point of impact.

Defendant maintains that the taxicab had stopped with its front only partially extending into Royal street and that the Chevrolet, at great speed, dashed in front of it and then skidded sidewise into the front of the taxicab. This contention is likewise shown to be not well founded by the weight of the verbal evidence and by the physical fact, as we have said, that the Chevrolet came to rest at the curb on the upper, lake corner of the intersection, only a few feet from the point at which the crash occurred.

But, assuming for the moment that the Chevrolet was approaching at an excessive speed, as contended by the defendant, and that the taxicab driver brought his vehicle to a stop before entering the roadway of Royal street, we would be forced to conclude that his failure to see the approaching Chevrolet and to appreciate the danger of moving forward constituted negligence on his part, unless the speed of the Chevrolet was so great as to bring the situation within the rule which we followed in Fisher v. Levin, 16 La. App. 367, 368, 134 So. 439, in which we held that is is not negligence to attempt to proceed across an intersection in front of an on-coming automobile when the said on-coming car is so far away that it cannot possibly reach the intersection in time to collide, unless it is coming at such an extravagant speed as to confuse or mislead the driver of the other vehicle. In that case we said: "As appears from plaintiff's statement, as quoted, he saw the other car, but at the time it was a considerable distance away, it was coming towards him head-on, and he could not judge its speed. He was thus justified in assuming that it was operated at a normal speed, and since, from the point of view of a reasonable, careful driver, it appears to us that there was no apparent danger in crossing, plaintiff was not negligent in attempting to do so." See, also, Bethancourt v. Bayhi (La. App.) 141 So. 111.

Here, even if the speed of the other vehicle was somewhat in excess of the legal limit, and we do not believe that it was, still it was certainly not so great as to be misleading or confusing to the driver of the taxicab.

If, when he reached the corner, he stopped his vehicle, and looked down Royal street, as he says he did, then he should not have proceeded into Royal street at all, until the other vehicle had passed. Joseph Chalona Co. v. Smith (La. App.) 158 So. 237. We are convinced by the evidence that the taxicab reached the intersection a moment or two after the Chevrolet had already entered it, and that the driver of the taxicab, too late, realized the danger. This was negligence on his part.

■ It is unnecessary that we investigate the action of the driver of the Chevrolet. Even if he was at fault in some particulars, the negligence of the driver of the taxicab obviously contributed to the unfortunate result, and renders defendant liable. Quatray v. Wicker, 16 La. App 515, 134 So. 313. Therefore, unless it can be shown that the negligence of the driver of the Chevrolet, if there was negligence, may be imputed to Mrs. Biaggini or to plaintiff, or that either of them was guilty of independent negligence, then there must be a recovery.

There is nothing in the record whatever on which we can base a conclusion that there was anything which the deceased, or which plaintiff, her husband, could have done to avoid the accident, nor is there any reason for holding that the actions of the driver of the Chevrolet could be attributed to or imputed to the deceased, or to plaintiff.

It is contended that, even if there is liability for the accident, still there can be no recovery for the items of damage resulting from the death, because, so it is maintained, the death resulted from independent causes in no way related to the injuries sustained in the collision.

The doctor on whom plaintiff was forced to rely, that is, the doctor who attended his wife from the time of the accident until her death, is very positive in his statement that her death was not caused or even hastened by the injuries sustained in the accident. Plaintiff was, therefore, forced to rely on the testimony of other medical experts who had not attended his wife, or even seen her during the course of her disability, but who stated that, in their respective opinions, the death was caused by the injuries.

The contention is made that plaintiff is bound by the testimony of the first doctor referred to, and that he should not have been permitted to introduce evidence contradictory of that given by that doctor. The theory on which this contention is based is that to contradict such a witness is to impeach him.

Counsel for plaintiff maintains that such a witness is what he terms "a witness of necessity," and that, where the testimony of such a witness is not favorable, it may be contradicted by other evidence. As supporting this view, he cites Jones on Evidence, Civil Cases (3d Ed.) par. 857, in which is found the following: *"Party not bound to accept testimony of his own witness as correct.*—The general rule that one cannot impeach his own witness must not be understood to imply that the party is bound to accept such testimony as correct. On the contrary, it is very clear that one producing a witness may prove the truth of material facts by any other competent evidence, even though the effect of such testimony is to directly contradict his own witness."

■■ The question is not whether a witness vouched for by a party may be impeached, but whether such witness may be contradicted. There is a vast difference (not generally understood) between impeachment and contradiction. It is true, of course, that a party may not impeach his own witness, though there are exceptions even to this rule. By the word "impeachment" is meant to prove the witness unworthy of belief. This is not permissible. When a party places a witness on the witness stand, he vouches for the veracity of the witness. He may not, therefore, attempt to attack his character or general reputation for truthfulness, but he may contradict him if he proves to be incorrect or inaccurate.

In Boedicker v. East et al., 26 La. Ann. 209, the Supreme Court said: "We understand the rule to be that although a party introducing a witness is not permitted to impugn his character for veracity, and to show that he is not worthy of belief, he may nevertheless introduce evidence to rebut a statement made by the witness of a particular fact."

The rule is the same in criminal cases. In State v. Boice, 114 La. 856, 38 So. 584, 586, is found the following: "While the state cannot impeach the credit of its own witnesses, it is not committed to every statement which is made by them. It can explain or place before the jury, through other witnesses, the exact facts as to the matter so testified to. State v. Vickers,

47 La. Ann. 1574, 18 So. 639; State v. Pruett, 49 La. Ann. 283–291, 21 So. 842; State v. Duplechain, 52 La. Ann. 448, 26 So. 1000."

In Day v. Armour Fertilizer Works, 8 La. App. 720, we held that a party might contradict his own witness, and we quoted with approval the following from 40 Cyc., p. 2766 (b), 1 Greene, S. 442, 443: "A party has a right to contradict his own witness by independent evidence showing the facts to be different from those testified to by such witness although the incidental effect of the introduction of such evidence is to materially discredit the witness."

In State v. Johnson et al., 47 La. Ann. 1225, 17 So. 789, 790, the Supreme Court said: "It is a well-settled rule that one calling a witness is not absolutely bound by his testimony."

The question was last discussed by our Supreme Court in State v. Hill, 173 La. 181, 136 So. 485, 486, in which that court said: "A party is not to be placed at the mercy of the first witness he happens to put on the stand, and may prove his case, if he can, by any witnesses he may have, even if the testimony of the later witnesses contradicts and hence tends to impeach some earlier witness placed on the stand by him."

■ If, in the case entitled Maclin v. New England Mutual Life Ins. Co., 33 La. Ann. 801, there is a contrary view expressed, and we do not think there is, then that case stands alone against the weight of overwhelming earlier and later authority. It was, therefore, proper that plaintiff should have been permitted to introduce testimony contradictory of that given by the first physician.

■ It must be conceded, however, that great weight should be given to the testimony of the attending physician. There is nothing to show that it was biased or prejudiced, and, unless the physical facts and the expert testimony given by others clearly preponderate, we would not be justified in refusing to be guided by such evidence.

■ On the other hand, the record shows to our satisfaction that, though the deceased had reached the mature age of 78 years, she had been previously in excellent health and, on the day of the accident, had cooked the family meal and had dressed children in the household. It also shows that after the accident she was unable ever again to leave her bed, and that she died on the twelfth day. That she suffered considerably is admitted by the attending physician, and that her bruises must have been severe and that there was considerable shock is not seriously denied. The extent of the bruises is shown by the testimony of the undertaker, who, in preparing her body for burial, noticed that even after two weeks she still "was bruised on the left side and on the arm * * * between the elbow and the shoulder and on the side. * * *" The physicians who testified on behalf of plaintiff said that, though they had not examined the deceased prior to or after her death, they had heard described all the symptoms exhibited by her after the accident, and each rendered the opinion that the accident had contributed to the death.

We have found ourselves unable to leave this record except with the belief that there was causal connection between the accident and the ensuing death. With a full appreciation of the fact that the rule against reversing the finding of a trial court on a question of fact, unless there is manifest error, is based on sound reasoning, we cannot avoid the impression that here there has been error.

The manifest seriousness of such injury to an aged woman impresses us. The symptoms exhibited by her from the time of the accident until the death, the opinions of the two physicians, and the fact that this old lady, who was hale and hearty prior to the accident, never thereafter arose from her bed, creates a firm impression that there was causal connection between the injury and subsequent death.

In Shaffer v. Southern Bell Tel. & Telegraph Co., et al., 160 So. 439, in which the death occurred four months after the accident, we reached the conclusion that there had been no connection between the two, but even there we found the sequence of events as we said, most suspicious of cause and effect.

■ We find no rigid rule by which we may award damages in such a case as this. Our attention is called to Hamburger v. Katz et al., 10 La. App. 215, 120 So. 391, 394, which, so far as the question of quantum is concerned, presents facts somewhat similar to those found here, except that here the life expectancy of the deceased would have been somewhat shorter than was that of Mrs. Hamburger. In that case

we awarded the husband $6,000. We may repeat here what we said there: "In awarding damages for physical, mental, and moral suffering, we are conscious of our inability to compensate the sufferer, and of the impossibility of standardizing the award."

We believe it unnecessary to separately appraise the items of damage and shall make a lump sum award, which, we believe, bears appropriate relation to awards made in other cases.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of plaintiff, Anthony Biaggini, and against the defendant, Toye Brothers Yellow Cab Company, Inc., in the full sum of $5,000, with legal interest from judicial demand, and for all costs.

Reversed.