CULPEPPER, Judge.
This is a suit for damages arising out of an automobile collision. Plaintiffs are Mrs. Luna Belle Thibodeaux, driver of one of the vehicles, and her husband, Lee Thibodeaux, a passenger. Defendants are Thomas D. Hebert, uninsured driver of the other vehicle, and The Phoenix Insurance Company, plaintiffs’ own insurer, who is sued under the uninsured motorist clause. The district judge found the accident was caused solely by the negligence of Mrs. Thibodeaux and dismissed plaintiffs’ suit. Plaintiffs appealed. The defendant, The Phoenix Insurance Company, answered the appeal requesting that, in the event we find liability on the part of the uninsured motorist, it have judgment over against the said Thomas D. Hebert for the full amount of any such judgment.
The accident occurred at about midnight on March 7, 1964. The scene is on Louisiana Highway #347, a two-lane blacktopped thoroughfare running north and south between Breaux Bridge and Cecilia. The defendant Hebert was driving in a southerly direction when he collided with the rear end of the Thibodeaux vehicle, also proceeding toward the south. The point of impact is located on Highway #347 about %o of a mile south of an intersection with another blacktopped road known as “Four Corners”. Dell Angelíes’ Grocery Store is on the west side of the highway at the scene. A small graveled road leaves the west side of the highway and runs north of Angelíes’ grocery in a northwesterly direction to a point a short distance west of Four Corners on the blacktop road running east and west through that intersection.[1]
The issue is factual: Did the Thibo-deaux vehicle enter Highway # 347 at Four Corners and simply proceed south a distance of about 2/io of a mile at a speed of 35 to 40 miles per hour until struck from the rear by the faster moving Hebert automobile? Or, was Mrs. Thibodeaux traveling on the small graveled road, from which she entered Highway # 347 immediately in front of the Hebert vehicle at such a distance that Hebert did not have time to avoid the collision? The trial judge concluded the accident was caused by plaintiffs entering the highway from the graveled road immediately in the path of the Hebert vehicle. We are reluctant to find manifest error on this factual issue but, after carefully reviewing the record, we not only find the evidence does not support such a version of the accident, but defendants’ own witness, Leed Usie, testified to the contrary.
Mr. and Mrs. Thibodeaux testified that they, together with Mr. and Mrs. Leed Usie and their daughter, had been to Scrantz’s Restaurant, located a short distance west of Four Corners; on leaving the restaurant, they drove in an easterly direction to Four Corners and there entered Highway #347; they turned to the south on the highway and had driven approximately 2/io of a mile, at a speed of 35 to 40 miles per hour, when they were suddenly struck violently from the rear by the Hebert vehicle (which was admittedly going about 55 miles per hour). Both Mr. and Mrs. Thibodeaux testified positively that they entered Highway # 347 at Four Corners.
Defendants’ own witness, Mr. Leed Usie, who had been to the restaurant with plaintiffs and was a guest passenger in their vehicle, also testified positively that they entered Highway #347 at Four Corners and drove to the south about a quarter of a mile before they were struck from the rear by Hebert.
*421 Not even the defendant Hebert himself testified that plaintiffs entered Highway # 347 from the small graveled road. Since this is the sole testimony on which defendant must rely, we quote as follows:
“Q. Now, when was the first, time you saw a car in front of you ?
A. When I got by that little gravel road there, them two tail lights just light in front of me right there, and that’s where I put the brakes and they glide.
Q. What little gravel road? Is that the one by Dell Angelle’s store ?
A. Yeah.
Q. That’s the first time you saw those lights ?
A. That’s the first time I saw them.

Q. Did you see any flashing of any lights right before the accident as if she had put her brakes on ?
A. Yeah, I saw a flash as if she had put her brakes on. That’s when I saw the lights.
Q. That’s what made you slam your brakes on when you saw her putting her brakes on?
A. I slammed the brakes. I was closer than that to her when I put on the brakes.”
The district judge apparently found that even if Hebert did not see the plaintiffs enter the highway from the graveled road, this is the only reasonable explanation for Hebert’s failure to see plaintiffs’ taillights until it was too late to avoid a collision. We are unable to affirm this finding of fact in view of the positive testimony of both of the plaintiffs, and defendants' own witness, Leed Usie, to the contrary.
Defendants argue strenuously that this is a fact case depending on the credibility of the witnesses and that the trial judge simply did not believe plaintiffs. But what about Leed Usie? Defendants cannot attack his credibility because he was their own witness. They could have introduced other evidence to contradict him, but this they were unable to do. Thus, defendants are bound by the unimpeached and un-contradicted testimony of their own witness. The rule, as stated in Biaggini v. Toye Brothers Yellow Cab Company, 163 So. 780 (Orl.App.1935), is as follows:
“When a party places a witness on the witness stand, he vouches for the veracity of the witness. He may not, therefore, attempt to attack his character or general réputation for truthfulness, but he may contradict him if he proves to be incorrect or inaccurate.”
Furthermore, there are other factors which furnish a reasonable explanation as to why Hebert did not see the plaintiffs’ taillights until it was too late to stop. Hebert testified that he had gone to Mike’s Lounge at about 8:00 p. m. He admitted drinking 4 beers and leaving the lounge to drive home. The plaintiffs testified that at the scene of the accident Hebert smelled of intoxicating liquors. The state trooper who investigated the collision said that Hebert had been drinking. Hebert testified that he was given a ticket for driving while intoxicated, -with the understanding that his license would be revoked unless he paid the damages to plaintiffs’ car and obtained a release from them. He actually attempted to pay the property damage and obtain a release, but the plaintiffs refused. These factors indicate that Hebert’s deficient lookout was a result of his inattention or intoxication to some degree.
It is our conclusion that the collision was caused solely by the negligence of the defendant, the uninsured motorist, Mr. Hebert.
The next issue is the quantum of damages. At the outset of the trial it was stipulated that the property damage to plaintiffs’ automobile was the sum of $300.
*422 As to personal injuries, Lee Thibodeaux testified that his back began to hurt a day or two after the accident on March 7, 1964. He went to see his attorney who in turn sent him to see Dr. J. Boring Montgomery, a general practitioner of Lafayette. This physician saw Mr. Thibodeaux on March 13, 1964, which was 6 days after the accident. He diagnosed a* strain of the lower thoracic and lumbar spine and instituted diathermic treatment, twice a week at first, then once a week and finally, about qn.ce every two weeks. The record is unclear as to how long this physician continued to see Mr. Thibodeaux, but the doctor’s bill was $269. His prognosis was that plaintiff could continue to work as a butcher but would have discomfort at certain times.
On June 9, 1965 Mr. Thibodeaux was examined at the request o.f the defendant by Dr. Guy Jennings Dunning, Jr., a specialist in orthopedics. He could find nothing to justify Mr. Thibodeaux’s subjective complaints of pain in the lower back.
The evidence shows that Mr. Thibo-deaux was never hospitalized or immobilized and that he apparently returned to normal activities within a short time. Under the circumstances, we think an award of $1,000 in general damages is appropriate.
Turning now to Mrs. Thibodeaux, we find she said that within a few days after the accident her neck became stiff and painful. She also did not go to see Dr. Montgomery until six days after the accident. He diagnosed a muscular strain in the area of the cervical spine, for which he prescribed “diagnostic aids and muscle relaxants.” He also treated her twice a week at first, then once a week and later about once every two weeks. She also received dia-thermic treatments. The bill for treating Mrs. Thibodeaux was also exactly the sum of $269. Apparently, Mrs. Thibodeaux also returned to fairly normal activities within a short time.
At the request of defendant, Mrs. Thibo-deaux was also examined by Dr. Dunning, the orthopedic specialist, on June 9, 1965. Her chief complaints were of the neck. Dr. Dunning found no justification for her subjective complaints.
Under the circumstances, we think an award to Mrs. Thibodeaux in the sum of $1,000 in general damages is appropriate.
For the reasons assigned, the judgment appealed is reversed and set aside.
It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Lee Thibodeaux, and against the defendants, Thomas D. Hebert and The Phoenix Insurance Company, individually, jointly and in solido, for the sum of $1,000 in general damages, $300 property damage to the community automobile and $538 for medical expense of both Mr. and Mrs. Thi-bodeaux, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Mrs. Luna Belle Thibo-deaux, and against the defendants, Thomas D. Hebert and The Phoenix Insurance Company, individually, jointly and in solido, for the sum of $1,000 in general damages, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of The Phoenix Insurance Company, as third party plaintiff, and against Thomas D. Hebert, as third party defendant, in the full sum of the judgment rendered herein in favor of both Mr. and Mrs. Thibodeaux.
It is further ordered, adjudged and decreed that the defendants pay all costs in the lower court, as well as the costs of this appeal.
Reversed and rendered.

. Plaintiffs’ counsel argues there is no proof of the existence of this graveled road. The investigating state trooper did not have it shown on his report and hence said there was no such road. But, the plaintiff himself, Lee Thibodeaux, testified there was such a graveled road, although he insisted they did not travel it.