WATKINS, Judge.
The plaintiffs Virginia Brandt and her parents, Frances and George Brandt, appeal the trial court’s dismissal of their claims against Louis Rayford, defendant, Mid American Indemnity Company, Mr. Rayford’s insurer, and Shelter Mutual Insurance Company, plaintiffs’ uninsured motorist insurer. Plaintiffs’ suit arose out of a one-car accident in which Virginia Brandt was injured when the vehicle she was driving swerved into a ditch. Virginia Brandt claims that she lost control of her vehicle when she attempted to avoid hitting Mr. Rayford's vehicle which was allegedly parked without lights in the southbound lane of Highway 964. The trial court found as a matter of fact that the defendant’s vehicle was not parked in the southbound lane of the highway but, instead, was parked on the shoulder of the roadway. The only issue on appeal is whether the trial court erred in its factual finding that the defendant’s vehicle was not parked in the roadway in violation of LSA-R.S. 32:141 A. We affirm.
FACTS
On January 28, 1983, between 11:45 p.m. and 12:00 midnight, Virginia Brandt was travelling alone on State Highway 964 when she saw Louis Rayford’s vehicle ahead of her and took evasive action in order to avoid hitting it. She testified that Mr. Rayford’s vehicle was mostly in her lane of travel with only the two passenger-side tires on the shoulder. She also testified that Mr. Rayford’s vehicle did not have any lights on when she encountered it. *1014 When she perceived the danger, she slammed on her brakes causing her vehicle to skid and ultimately swerve into the ditch on the opposite side of the highway. She claims that she was travelling approximately 50 miles per hour when she first saw Mr. Rayford's vehicle. At the time of the accident Virginia Brandt was seventeen years of age.
Mr. Rayford testified that approximately thirty minutes before the accident occurred his vehicle had a blowout and he pulled completely off the road to change the tire. He was unable to change the tire after discovering that his spare tire was low. He stated that he turned off his headlights, but left his parking lights on. Thereafter, he stood by his car until the accident occurred.
The first persons to arrive on the scene of the accident were Joseph Wade and his son, Joseph Wade, Jr. (Jay). The Wade residence was located adjacent to Highway 964, directly across the road from where Miss Brandt’s vehicle landed in the ditch. Jay Wade testified that he was watching television when he heard the screeching of tires and a spewing sound, which later was found to be a gas line which ruptured when Miss Brandt’s vehicle ran into the ditch. Jay woke his father and they both went outside to see what had happened. They both testified that their first concern was whether anyone had been injured. Miss Brandt told them she was fine; “just some bumps and bruises.” Thereafter, Mr. Wade immediately proceeded to plug the gas leak with a broom handle he retrieved from his home. Mr. Wade and Jay Wade testified that when they arrived on the scene. Mr. Rayford’s vehicle was completely off the roadway and although they did not notice his lights on at that time, due to their concerns for Miss Brandt and the gas leak, they stated that as soon as the gas leak was plugged they noticed that the car had lights on. Mr. Wade further testified that had Mr. Rayford moved his car before he and his son got to the road he would have heard it crank up. During plaintiffs’ cross examination of Jay Wade he admitted that in a previous deposition, taken in April of 1986, he did not remember where Mr. Rayford’s vehicle was parked. He also stated that since the date of the deposition he did remember that all four tires of Mr. Rayford’s vehicle were off the roadway on the shoulder, directly adjacent to the driveway leading to the Wade family home.
Frances and George Brandt were the next witnesses to arrive on the scene. Mr. Brandt testified that the Rayford vehicle was off the roadway when he arrived, but that he heard Mr. Rayford state that he had moved the car. His testimony was as follows:
A. Yes, sir. He had told us when the trooper was there that he had moved it after the accident.
Q. All right. Now that was one of the questions I was going to ask you. Did you hear Mr. Rayford say that?
A. Yes.
Q. And he told you that, or told the trooper that?
A. He told the trooper that.
Q. And you heard him specifically say that?
A. Yeah.
Q. What were the words that he used, to the best of your recollection?
A. I think he was asked the question if he had moved it and he said yes.
Q. Okay. You heard the trooper ask him that?
A. I don’t know whether I asked him or the trooper asked him.
Q. Did he say where he had moved it from?
A. No, sir. Just off the pavement.
Q. Okay. Did he say when he moved it?
A. No, but presumably it was some time after the accident, before the trooper arrived.
Q. Okay. That was your presumption?
A. Yes.
The next witnesses to arrive on the scene were Mr. Rayford’s wife, Saraphine Ray-ford, and her son, Willie Sheppard. Mrs. Rayford and Mr. Sheppard testified that when they arrived at the scene of the acci *1015 dent Mr. Rayford’s car was parked off the roadway and the car had lights on.
The last witness to arrive on the scene, approximately thirty minutes after the accident, was State Trooper Russell Cook. Officer Cook testified on cross-examination that he remembered the accident after he refreshed his memory from his accident report. He testified that Mr. Rayford’s vehicle was on the roadway when he arrived and that Mr. Rayford told him that it was on the roadway and that he turned off the lights. When asked if Mr. Rayford’s lights were on, the officer replied, “I don’t know if they were on. I think they may have been, I don’t know.” On direct examination Officer Cook testified primarily about the skid marks left by plaintiff’s vehicle. Officer Cook described the skid marks to be approximately 175 feet, with the first 100 feet being a straight line and then the vehicle turned and skidded another 75 feet into the ditch. Thereafter, the vehicle skidded another 80 feet in the ditch with the car impacting the ditch with the left front and rotating to impact the left rear. Officer Cook also testified that the skid marks began approximately 300 feet from the rear of Mr. Rayford’s vehicle. Based on these measurements, the officer estimated the 'speed of Miss Brandt’s vehicle to be 75 miles per hour.
The only other witness to testify was defendant’s expert accident reconstructionist, Olin K. Dart. Based upon the measurements made by Officer Cook, Mr. Dart estimated that Miss Brandt was travelling at approximately 70-75 miles per hour when she saw Mr. Rayford’s vehicle. He further testified that had Miss Brandt been travelling at 50 miles per hour, with a one and a half second reaction time she would have been able to stop her vehicle before entering the ditch.
Based upon the evidence presented, the trial court gave the following pertinent oral reasons for judgment:
Mr. Rayford testified he did turn his headlights off but he had his taillights, the blinking lights on. Of course, we know from the testimony that Lt. Cook did not arrive at the scene of the accident until 15 minutes or more had elapsed, the time after both Mr. Wade and his son had walked out and made their observations. I say this because, obviously, the location of the Rayford car is extremely important.
Louisiana Revised Statute 32:141A provides, upon any highway outside of a business or residential district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main travel part of the highway when it’s practical to stop, park or to leave such vehicle off such part of said highway. But in any event, an unobstructed width of the highway opposite a standing vehicle shall be left for free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway. (C) The driver of any vehicle left parked, attended or unattended, on any highway between sunset and sunrise shall display appropriate signal lights thereon sufficient to warn approaching traffic of its presence.
A violation of section 141, I think under the rationale in the “Wright versus O’Neal,” 427 So.2nd 852, La., 1983 case, would perhaps constitute negligence per se, because in the “Wright” case the court said that the rule relied upon for imposing responsibility is based upon the statute. The court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty often resorting to the court’s own judgment in the scope of protection intended by the legislators. And it also mentions that there is a twofold principal: [sic] (1) was the conduct complained of a cause in fact of legal harm and if so, did the accident breach a legal duty imposed to protect against a particular risk involved. And it’s obvious to the court that the purpose of section 141 is to eliminate people leaving a vehicle on the paved or main travel part of the vehicle, [sic] unlighted, causing other people to run into it and/or to react in such a manner to avoid the vehicle causing them injury perhaps going into side ditches.
*1016 Whether or not section 141 is applicable in this case is dependent upon the location of the Rayford vehicle. So, it’s necessary for the court to make a determination as to credibility of the various witnesses who have testified. In doing so, the court is cognizant that the law provides that when a person testifies under oath, there is a presumption that that person is testifying truthfully. Further, that that presumption may be overcome by contradictory evidence, demeanor of the witness and the motive a person might have in testifying a particular way.
In this case it’s obvious to the court that there is contradictory evidence. Where was the Rayford vehicle at the time that Miss Brandt applied her brakes and started her skidding? As a matter of finding of fact, the court finds that the Rayford vehicle was off of the main travel or paved portion of the highway at the time of the braking by Miss Brandt and therefore section 141 is not applicable.
Then the question is, inasmuch as 141 is not applicable, what other — what negligence was there by Mr. Rayford? Is it negligent for him to leave his vehicle off the main travelled road without having lights, flares or other appropriate signal lights thereon sufficient to warn approaching traffic of its presence?
The court does not find that there is a duty to require that a person who is off of the main travel or paved portion of the highway to display appropriate signals. However, if there is such a requirement, the court finds that Mr. Rayford’s blinking lights were on and that this light constituted appropriate signals to others.
The plaintiffs allege that the trial court erred in concluding that the Rayford vehicle was parked off of the roadway at the time of the accident. Plaintiffs contend that because Officer Cook was the defendants’ witness plaintiffs are bound by his testimony and vouchsafe its veracity.[1] While it is true that a party may not impeach his own witness, this general rule must not be understood to imply that the party is bound to accept such testimony as correct. On the contrary, it is very clear that the party producing a witness may prove the truth of material facts by any other competent evidence, even though the effect of such testimony is to directly contradict his own witness. Biaggini v. Toye Bros. Yellow Cab Co, 163 So. 780 (La.App. Orl.Cir.1935), and cases cited therein. “[T]here is no rule that a party cannot prevail unless the evidence produced to establish his case is harmonious and consistent throughout. Indeed, if that were the rule, success would rarely attend an attempt to prove an ultimate fact.” State, Department of Highways v. McPherson, 259 So.2d 33, 39 (La.1972).
The plaintiffs complain that the defendants did not rebut Officer Cook’s testimony relating to what Mr. Rayford allegedly told him after the accident. To the contrary, Mr. Rayford testified that when he had the blowout he pulled his car over on the shoulder of the road, completely off the roadway. Although Mr. Rayford was not specifically asked whether he told Officer Cook that his car was on the roadway, his testimony that he pulled his car completely off the roadway after he had his blowout is sufficient to rebut the testimony of Officer Cook.
The testimony as a whole reveals that Officer Cook could not have seen Mr. Ray-ford’s vehicle on the roadway when he arrived at the scene thirty minutes after the accident. All of the witnesses to arrive prior to Officer Cook testified that when they arrived at the site of the accident Mr. Rayford’s vehicle was completely off the roadway. Therefore, the only explanation of how Mr. Rayford’s vehicle could have been on the roadway at the time of the accident, and off the roadway when everyone arrived, would be that he moved the vehicle after the accident. Plaintiffs bore the burden of proving this fact by a pre *1017 ponderance of the evidence. Miss Brandt did not testify that she saw Mr. Rayford move his vehicle. Mr. Rayford did not state that he moved his vehicle after the accident. Furthermore, Mr. Wade testified that once he was awakened he would have heard Mr. Rayford’s vehicle crank up if it had been moved after the accident. In view of the foregoing we cannot accept the plaintiffs’ theory that Mr. Rayford pushed his vehicle off the roadway after the accident.
Before an appellate court can disturb a factual finding of the trial court it must determine that the finding is manifestly erroneous and has no reasonable factual basis. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The evidence presented on the issue of where Mr. Rayford’s vehicle was parked at the time of the accident is inconsistent. Although our evaluation of the evidence might have been different from that of the trial court, we cannot say that it was clearly wrong in its determination that Mr. Rayford’s vehicle was not parked on the roadway at the time of the accident. Accordingly, we affirm the judgment of the trial court. Costs of this appeal are to be borne by plaintiffs.
AFFIRMED.

. We note that the testimony of Officer Cook concerning the location of Mr. Rayford’s vehicle was brought out on cross-examination by the plaintiffs, and was not addressed on direct examination.